## J. C. FURGUSON, Appellant, v. F. M. HENRY.

| 95 | 439 |
| 95 | 413 |
| 95 | 439 |
| 104 | 197 |
| 95 | 439 |
| e113 | 872 |
| 95 | 439 |
| 115 | 259 |

**Counting Ballots:** JURY QUESTION. Where ballots are admitted in evidence upon preliminary proof that the statute provisions as to their preservation have been observed, and there is oral evidence that the ballots are altered, it becomes a question of fact and not of law whether the ballots or the oral evidence shall prevail; especially, where said oral evidence is not conclusive in its nature.

SAME. It is not intended to be decided that a jury is to pass upon the validity of a ballot where doubts arise because of marking, or the condition in which it was cast.

SAME: PRIMA FACIE PROOF. A showing that ballots came through the channels and from the custodians provided by law for their keeping makes such ballots *prima facie* evidence. This may be met with proof that they are not as they were cast and counted.

PLEA AND PROOF. And that ballots were altered may be shown without any allegation of alteration.

**Filing Statement of Contest.** The twenty days of Code, 697, refer to the canvass by the board of supervisors and not to the return of the judges of election.

*Appeal from Cedar District Court.*—HON. W. D. THOMPSON, Judge.

FRIDAY, OCTOBER 4, 1895.

The plaintiff is the contestant for, and the defendant the incumbent of, the office of county clerk of Cedar

county, and at the general election in 1894 the plaintiff
was the Democratic candidate and the defendant the
Republican candidate for such office. The board of
supervisors, in its canvass of the returns declared the
defendant elected, and the plaintiff instituted proceed-
ings to contest the election. The court of contest,
which name, for convenience, we will use for the special
tribunal, determined that the contestant was elected,
and gave judgment accordingly. The incumbent
appealed to the district court, in which a jury was
impaneled, and at the close of the evidence the court,
on motion of the incumbent, directed the jury to give
a verdict for him, and from a judgment on such verdict
the contestant appealed.—*Reversed.*

*Wright & Wright* and *Charles W. Kepler* for con-
testant.

*T. B. Hanley, W. N. Treichler* and *Preston, Wheeler
& Moffit* for incumbent.

Granger, J.—The canvass of the votes in the town-
ships of the county was made November 7, 1894. The
canvass of the returns by the board of supervisors was
made on November 12, 1894. The statement of contest
was filed with the county auditor on the first day of
December, 1894. The incumbent, before the court of
contest, moved to dismiss the petition of contestant,
on the ground that the court was without juris-
diction, it having been filed more than twenty
days after the canvass of the votes by the judges
of election. The motion was overruled, and was again
presented and overruled in the district court, and that
action of the court is assigned as error on this appeal.
The assignment presents the question of whether the
twenty days in which the statement of contest is to be
filed commences with the canvass of the votes by the

judges of election in the different townships or that by the board of supervisors, which constitutes the county board of canvassers. It is provided by Code, section 697, that the contestant "shall file in the office of the county auditor, within twenty days after the votes have been canvassed, a written statement of his intention to contest the election." The incumbent attaches importance to the words "after the votes have been canvassed," and argues that the canvass by the township boards is of the votes, while that of the board of supervisors is of the returns; and, as the statement is to be filed within twenty days from the canvass of the votes, the time commences from the first canvass.

As to township boards, the law provides that "when the poll is closed, the judges shall proceed to canvass and ascertain the result of the election." Code, section 622. It is then provided that: "When the canvass shall have been completed as provided by law, the clerks shall announce to the judges the total number of votes received for each candidate; at least one judge of the election shall then proclaim in a loud voice the total number of votes received for each of the persons voted for," etc. Acts Twenty-fourth General Assembly, chapter 33, section 25. The law provides that the judges of the election shall make a return of the votes given for each person for each different office, and this return is to be canvassed by the board of supervisors. It is a return of the votes cast. The law requires the board of supervisors to "canvass the returns and make abstracts, stating in words  *  *  * the name of each person voted for, and the number of votes given to each person for each different office." Code, section 635. Both canvasses are of the votes. The one is from the ballots, and the other is from the returns. A conclusive thought, on this question, is this: The office in question is a county office. The result of the election is only declared by the county

board of canvassers. The law provides, as to the county canvassers: "Each abstract of the votes for such officer as the county alone elects, shall contain a declaration of whom the canvassers determine to be elected." Code, section 639. This is the first legal or official information of the result of the election of a county officer. Until then he is not presumed to know or have information that he may not be elected. In fact, before that, no knowledge is presumed, and the law, as to a contest, should not operate before the result is known. The incumbent says, "The only persons who canvass the votes are the judges of election at the various election precincts." The whole argument rests upon this thought. If we were to so hold, it would be a practical bar to contests for state offices, for in such cases the statement must be filed in thirty days from the day when the "votes are canvassed," which is the same provision as that under consideration; and the result of their election is not declared until after the expiration of the thirty days; and, besides, the contest might be for causes arising with the state board of canvassers, whose duties are performed after the thirty days. The district court was clearly right in its ruling. It seems that the court later, on another motion, changed its ruling on this question, which will be noticed hereafter. See *Clark v. Tracy*, 95 Iowa, 410 [64 N. W. Rep. 290].

II. At the trial in the district court the contestant put in evidence ballots as returned to the auditor from the different voting precincts, under rulings of the court, and the ballots so counted gave to the contestant a majority over the incumbent of eighteen votes, which the court held to be a *prima facie* case for contestant. The incumbent then put witnesses on the stand who, against objections, were permitted to testify that certain of such ballots shown them were not as they were voted or counted by the

judges of election. Contestant insisted that it was error to admit the testimony, for the reason that no such issue was made by the pleading. We think that there was no error in the ruling of the district court in this respect. The issues were such that contestant assumed the burden of showing that he had received a greater number of votes than the incumbent, and to do that he put in evidence the ballots now in question, with others, which gave him a majority. The ballots thus in evidence were valuable, as such, because of their identity as those cast at the election. The proofs that they came through the channels and from the custodian provided by law for their preservation and keeping gave to them such a *prima facie* character. It was, then, the right of the incumbent to discredit this evidence, and this he might do by disproving the identity arising from the preliminary proofs. We do not think that proof that the proper officers have done the things prescribed in the law for the preservation of the ballots in the condition in which they were canvassed is more than a *prima facie* showing. To hold it conclusive would be hazarding too many and too valuable interests on the integrity and watchfulness of one or more public officers. If we assume the results anticipated by the law from the discharge of their duties until the contrary appears, we have answered every requirement of public policy. The contestant urges that the incumbent should have amended his pleadings, and alleged an alteration of the ballots. The pleadings clearly indicated the line of evidence to be used to determine the issues. No rule of pleading required the incumbent to assail, by averment the kind or character of the evidence to be used by the contestant. Such is not the office of a pleading. When evidence is offered, its value, in every important particular, is open to question including, if documentary, its genuineness. The evidence in

question went to the genuineness of the ballots, and
we think it was properly admitted.

III.   At the close of the evidence the incumbent
filed a motion asking the court to instruct the jury to
find for him, and assigning twelve grounds therefor.
The record shows that the motion was sustained as to
eight grounds thereof, and one of them was that the
statement of contest was not filed within twenty days
after the canvass of the votes by the judges of election
in the different precincts, being the same proposition
before passed upon in a motion to dismiss the state-
ment of contest.   We infer that the court had changed
its mind on the legal proposition involved.   This ques-
tion we have determined in the first division of
the opinion, and need not notice it further.   By
the last ruling the court was in error.   Con-
testant states, as a proposition to be considered under
this ruling of the court, the following:   "(3) Where it
is shown that the ballots have been preserved and pro-
tected, as the law provides, and there is evidence
offered tending to show that the ballots have been
changed, can the court, as a matter of law, ignore the
ballots, and say that no issue of fact is tendered for
the jury to pass upon?"   The incumbent declines such
a proposition, and states the following as the one
arising on the record:   "Where there is some evidence
tending to show that the ballots have been preserved
as required by law, and there is abundance of uncon-
tradicted evidence proving beyond doubt that the
ballots have been tampered with, altered, and changed
since they were canvassed and counted by the judges of
election, is it not the duty of the court, as a matter of
law, to ignore the ballots, and direct the jury to return
a verdict for incumbent?"   This difference of opinion
as to what question properly arises comes from differ-
ent views as to the effect of the evidence offered to
impeach the verity of the ballots put in evidence by

contestant.    This evidence was mainly, if not entirely, by clerks and judges of the election boards in the different precincts, and was of their recollections as to the different ballots shown them having been voted at the election, either at all, or as they then appeared.    This evidence was as to some twenty-six ballots, and as to twenty-three of them it is said that the evidence is uncontradicted and conclusive of their being changed. It is because of this conclusive character of the evidence that the incumbent relies on the proposition stated by him as the correct one.    We do not concur as to the evidence being so conclusive. We think, as to the character of these particular ballots, the evidence is in conflict.    It is true that no other witnesses are called that contradict those of the incumbent, but the following is a provision of the law as to the preservation of ballots after they are canvassed in the voting precincts:    "When the canvass shall have been completed as now provided by law, the clerks shall announce to the judges the total number of votes received by each candidate; at least one judge of the election shall proclaim in a loud voice the total number of votes received by each person voted for and the office for which he is designated, as announced by said clerks, and the number of votes for and the number of votes against any proposition which shall have been submitted to a vote of the people; immediately after making such proclamation, and before separating, the judges should fold in two folds and string closely on a piece of flexible wire, all ballots which have been counted by them except those marked 'objected to,' unite the ends of each wire in a firm knot, seal the knot in such manner that it cannot be untied without breaking the seal, enclose the ballots so strung in an envelope, and securely seal such envelope in such a manner that it cannot be opened without breaking the seal, and return said ballots,

together with the package with the ballots marked 'defective' or 'objected to' in such sealed package or envelope, to the proper auditor, clerk, or recorder, as the case may be, from whom the same was received, and such officer shall carefully preserve such ballots for six months, and at the expiration of that time shall destroy them by burning without previously opening the package or envelope." Acts Twenty-fourth General Assembly, chapter 33, section 25. There was evidence as to the observance of this law, more or less conclusive, that we think overcomes the claim that the testimony of these witnesses is uncontradicted. If this case is to be retried, it is important that we avoid a discussion of the particular facts because of which there is a claim that the ballots were not properly preserved, and hence the consideration of this point is somewhat delicate. Our thought will be apparent if we assume that the law quoted is carefully observed. Would it then be contended that the testimony of witnesses as to their recollection of the condition of particular ballots from among many others would necessarily overcome what would be the natural or probable result of such an observance? We think that no such contention would be made. If not, is it not the rule that, if such observance is questioned, its degree should be determined, and, as thus fixed, it should weigh against the recollection of the witnesses? Such we think to be the rule. It seems to us, then, that the proposition to be considered is substantially this: Where ballots are admitted in evidence upon preliminary proof, and their genuineness is questioned by oral evidence, does the oral evidence, as a matter of law, prevail, and are the ballots to be disregarded? With the proposition thus reduced, we have no reason to think there is a difference of opinion as to the law. The oral evidence has certainly no such effect. It merely presents a question for the jury

as to the genuineness of the ballots. If the ballots are found to be not genuine, the effect is to be determined by rules of law applicable to the situation. It is likely true that a situation might arise, because of such a confusion of good and bad ballots, that all should be excluded. See, in this particular, *Hendee v. Hayden*, 60 N. W. Rep. (Neb.) 1034. It may be stated that it does not necessarily follow that because some of the ballots in evidence or that are offered are not genuine all the ballots are to be disregarded, but whether or not such a result is to follow must depend on the situation produced by such ballots; and in this case the facts do not call for or warrant a definite holding in this respect, because it does not appear, by a proper finding, but that all the ballots in evidence are genuine. We think the case should have gone to the jury to determine the genuineness of the ballots in question, with instructions as to the legal effect of the facts as conceded or found. These we cannot anticipate in this case, so as to define the course of procedure on another trial. It may be well to guard against misconception by saying that we do not, in this opinion, deal with the question of what is a legal ballot,—that is, one so cast that it should be counted in the canvass by the judges of election,—but only with genuineness of the ballots as the ones canvassed by the judges of election.

This much is said to avoid an inference that we hold that the jury is to determine the validity of a ballot where doubts arise because of markings or the condition in which it was cast. The question as to the legality of ballots as cast is not before us. There is some question as to the manner in which the ballots were put in evidence,—as that they were offered in the sacks, sealed, and not opened, to the inspection of the jury. This was done upon the theory that there was no dispute as to the number of such ballots, nor for whom they were cast. Of course, if

the facts are so beyond question that the court may state them as facts to the jury, the evidence is not important. There seems to be a little confusion in this respect in this case, and we think that on another trial all the ballots in evidence should go to the jury to be counted, in the absence of the facts being agreed upon or conclusively established. There are no other questions important to be considered in view of a new trial, and the judgment is *reversed*.