JOHN P. COOK, Contestant, Appellant, v. JOHN FISHER, Incumbent.

100    27
106   160
100    27
d110  563
100    27
131   333
131   335
100    27
133   103

Elections: AUSTRALIAN BALLOT LAW. A ballot should not be excluded as bearing an identification mark, under Acts Twenty-fourth General Assembly, chapter 33, where the mark relied on was made by the election officers, and consisted merely of an alteration or addition to the name of the candidates, which was also made on other ballots, so that it does not afford any means of identifying any particular ballot.

OFFICIAL BALLOT. Though chapter 33, Acts Twenty-fourth General Assembly, provides particularly how the official ballot shall be prepared, corrected, and furnished, the making of said addition or alteration did not prevent said ballots from being official ballots, and, hence, did not require the rejection of the vote of the precinct.

CONSTRUCTION OF STATUTE. Such act is not so far mandatory as to require that a voter shall be deprived of his right to vote, because a technical mistake is made in printing the name of a candidate.

Estoppel to Object: BY OFFER OF SIMILAR EVIDENCE. A party to an election contest is not estopped from objecting that the entire vote of a township is illegal, because the ballots cast therein are all illegal, by offering in evidence ballots cast therein, for himself, where he couples his offer with the condition that they shall be counted for him, only, in case the ballots are declared legal, and the vote of the township held valid.

*Appeal from Polk District Court.*—HON. T. F. STEVENSON, Judge.

WEDNESDAY, DECEMBER 9, 1896.

THESE parties were opposing candidates in the Fifth supervisoral district of Polk county, for the office

of supervisor, at the general election in 1894. The board of canvassers declared said John Fisher elected, whereupon John P. Cook instituted proceedings to contest said election, and the court of contest found and declared in favor of John P. Cook, from which John Fisher appealed to the district court. The district court found in favor of the incumbent, John Fisher, and contestant, John P. Cook, appealed to this court. The issues and facts appear in the opinion.— *Affirmed.*

*Bishop, Bowen & Fleming* and *John McLennan* for appellant.

*Day & Corey* for appellee.

GIVEN, J.—I. There is no dispute as to the facts, and except in one particular, they are fully stated by the appellant, as follows: The only ground upon which this appeal is based, and which the appellant desires to bring to the attention of this court, is based upon the changes made in the official ballots, by the election judges in Four Mile township, that being one of the voting precincts of the Fifth supervisoral district of Polk county. In the supervisoral district referred to, John Fisher and John P. Cook were candidates. In said township there had been a township ticket nominated, and nomination papers relating thereto had been filed in the office of the county auditor. Among others nominated for township officers, was "A. Winterowd," for township assessor. The nomination papers were indistinctly written, and the county auditor, in preparing the official ballot, read the name to be "R. Winterowd." The official ballot was prepared and on file in the office of the auditor at the time, and for the period, required by law. No objection having been made, and no correction

suggested, the official ballots were, on the morning of election day, sent by proper messenger to the polling place, in said Four Mile township, the same being about eight miles from the court house in Des Moines. Upon the ballots being opened by the election board, upon its organization, the judges discovered what appeared to them to be an error in the ballots, in this: that the initial of Mr. Winterowd, candidate for assessor, should have been "A.," instead of "R.," as the same was printed in the ballots. The judges decided to change the ballots, and, voters having presented themselves, one of the judges, with a pencil, added the letter "A.," as an initial to the name of Mr. Winterowd, making it "A. R. Winterowd," and several of these ballots were voted. In one or two instances such judge marked the letter "A." over the letter "R.," changing it in that way to read "A. Winterowd." After eight or ten ballots had been voted, the judges procured a large stamp in form of the letter "A.," about three times as large as the type of the original letters in which the name was printed, and with this stamp, they erased the letter "R.," and made the name read, in each subsequent ballot used, "A. Winterowd." It will thus be seen that the only question involved is whether or not the judges were, in the first place, authorized to make changes in the ballots of the character in question; and, in the second place, whether, having assumed the right to make such changes, the same was unauthorized by law so far as to render the ballots void. If the ballots from Four Mile township are entitled to be counted, without respect to the change referred to, then the appellee was duly elected to the office in question. If, on the other hand, the ballots from said township should not be counted, then the appellant was elected to said office.

To this, appellee adds as follows: "The statement of appellant is substantially correct, but needs the following modification: Five ballots only were counted for incumbent, in which the name 'R. Winterowd' was changed by inserting with a pencil the letter 'A.' before the letter 'R.,' making the name read 'A. R. Winterowd.' All the other ballots counted for incumbent were changed by stamping with a rubber stamp the letter 'A.' upon the letter 'R.,' making the name read 'A. Winterowd.' Of the ballots counted for contestant, one was changed in like manner with pencil; and the remainder were changed with the same rubber stamp, by stamping the letter 'A.' upon the letter 'R.' "

II. On the trial, appellant offered in evidence on his own behalf, seventy-nine of said ballots cast for him, and appellee contends that he is thereby estopped from claiming that the same kind of ballots cast for appellee are illegal. We understand from the record that this offer was upon the condition that these ballots should be counted in the event that the entire vote of the township was not rejected. We do not think that appellant should be estopped from questioning the legality of the vote of the township because of this offer.

Another contention that we will dispose of in this connection is the claim of appellant that all of said ballots bear distinguishing marks, and should therefore be rejected. All those changed with the stamp are alike, and not distinguishable from each other. Those changed in pencil to read "A. R. Winterowd" were, so far as appears, alike, and not distinguishable from each other; and the same is true of those changed in pencil from "R." to "A." Winterowd. Those changed by pencil and by stamp were distinguishable from each other, and those that read "A. R." were distinguishable from those in pencil that

read "A." Winterowd. None of them bear any distinguishable mark made by the voter, nor by which it can be ascertained how any one elector voted. Therefore the secrecy of the ballot was preserved. In *Whittam v. Zahorik*, 91 Iowa, 23 (59 N. W. Rep., at page 62,) in considering the provision of section 27, Acts Twenty-fourth General Assembly, chapter 33, against marking ballots, this court said: "This provision is designed to prevent identifying marks by any person, including the voter, and prohibits such marking, by necessary implication. If it is done by some one without the knowledge of or consent of the voter, as by one of the election officers, it should not prevent the counting of the ballot; but, where it is done by the voter in preparing his ballot, it is a violation of the law, and, not being such a marking as the law sanctions, the ballot should not be counted." It is further said: "It is evident that in such cases, and in others where the unauthorized mark is not of a character to be used readily for the purpose of identification, the ballots should be counted; but where the unauthorized marks are made deliberately, and may be used as a means of identifying the ballot, it should be rejected." There is not sufficient ground for rejecting any of these ballots because of distinguishing marks.

III. We now inquire as to the real contention in this case, namely, whether the entire vote of Four Mile township should be rejected because of the change in the ballots made by the judges of election. This election was held under chapter 33, Acts Twenty-fourth General Assembly, entitled, "An act to provide for the printing and distribution of ballots at public expense, and for the nomination of candidates for public offices; to regulate the manner of holding elections; and to enforce secrecy of the ballot." This act provides at length and with much particularity, the manner in which

official ballots shall be prepared, corrected, furnished, and used, and provides that no other ballots shall be used, or counted. Appellant contends that, by the change made by the judges, these ballots ceased to be official ballots; that the provision of the statute that none other than official ballots shall be used, or counted, is mandatory, and therefore all the vote of Four Mile township should be rejected. Appellant cites *West v. Ross*, 53 Mo. 350; *State v. Frazier*, 98 Mo. 426 (11 S. W. Rep. 973); *People v. Board of Canvassers of Onondaga County* (N. Y. App.) (29 N. E. Rep. 327); *State v. Smith*, 94 Iowa, 616 (63 N. W. Rep. 453); and other cases, —to the effect that courts must follow the provisions of the statute without regard to the consequences that may follow. This contention is not disputed, but, when the consequences are such as appellant demands, we may well inquire whether the law requires them. These ballots were prepared and furnished to the judges of the election by the officer and in the manner required. They were official ballots, correct in every particular, except the initial of A. Winterowd, a candidate for assessor. The judges, without leaving any distinguishing marks, corrected all the ballots furnished, and made them just what they should be. These correct ballots were furnished to the voters, and cast by them in the manner prescribed. There is no pretense that any fraud or wrong was intended, or could or did result from the mistake of the auditor, or the action of the judges, to any one; nor that the vote cast is other than a fair and free expression of the choice of the voters. We are asked, upon this state of facts, to disfranchise the voters of Four Mile township who voted at that election, and we should surely inquire diligently whether the statute demands this, before so declaring. Did these ballots become other than official ballots by reason of the correction made by the judges? It is true, the law gave them no authority

to make the correction. It is true, the courts should adhere tenaciously to every provision of the law looking to the purity of the ballot, and approve of no act or omission that renders fraud or injustice possible. We have seen that these ballots, as furnished to the voters, were correct in every particular; that they were just what the law required they should be as official ballots; and that no fraud or injustice did or could result from their use as official ballots. Under this state of facts, we think they did not lose their character as official ballots, because of the correction made by the judges. This view has support in cases hereinafter cited.

IV. While it might be said that the foregoing conclusions dispose of the case, yet we proceed to consider the claim of appellant that the statute is mandatory as to the manner of preparing and correcting official ballots, and in providing that none other shall be used or counted. Appellant cites and quotes from *People v. Board of Canvassers of Onondaga County, supra,* a case considered at great length, there being three separate opinions by the judges concurring, and two by the judges dissenting. The case was under a statute requiring that the candidates of the different parties be printed on separate ballots, and indorsed on the outside as an official ballot with the number of the district in which it was to be used. By accident or mistake, the ballots of the Republican nominees, though properly prepared, were sent to the wrong districts, and voted in those districts. The mistake being only as to Republican ballots, and the indorsement being open to view when the ballot was folded, it constituted a distinguishing mark on the Republican ballots, and it is upon that ground that they were held by the majority to be illegal. While that case is different in its facts and in its inquiries from this, there is much said therein that

is applicable to our inquiry, but nothing in conflict with the conclusion we reach. In *State v. McKinnon*, 8 Or. 493, it was held, under a statute requiring that all ballots be on plain white paper, that ballots on colored paper were illegal. The court says: "The correct principle is announced in the case of *Kirk v. Rhoads*, 46 Cal. 399, which holds that a ballot cast by an elector in good faith, should not be rejected for failure to comply with the law in matters over which the elector had no control, such as the exact size of the ticket, the precise quality of the paper, or particular character of type or heading used, where the law has provisions to that effect; but if the elector wilfully neglect to comply with requirements over which he has control, such as seeing that his ballot, when delivered, is not so marked that it may be identified, the ballot should be rejected. Am. Law Elec. section 403." In *Reynolds v. Snow*, 67 Cal. 497 (8 Pac. Rep. 27), cited by appellant, the court held that a ballot not conforming to the size required, was properly rejected. This was in harmony with the rule in 46 Cal., quoted above. The voter must be presumed to have known that the ballot was not as required. It was also held that the fact that the voter erased the name of contestant, and wrote in the name of defendant, did not vitiate the ballot. Other cases cited by appellant are as to the duty of the court to enforce the statute, without regard to consequences. The language of the court in *Miller v. Pennoyer* (Or.) (31 Pac. Rep. 830), is so directly in point and in harmony with our views that we quote it at some length. The case was under a statute similar to ours as to the preparation of ballots, and providing that "the name of each person nominated shall be printed upon the ballot in but one place." The court says: "We are all agreed that the mistake, if it was a mistake, in printing the name of Mr. Pierce on the official ballot

in both the People's and Democratic groups of elec-
tors did not deprive the voters who cast such a ballot
of the elective franchise, or the candidate for whom it
was cast of the benefit of such a vote.   Under the
law as it now exists, neither a voter nor a candidate
has any control or voice whatever in the arrangement
and publication of the names or forms of the ballot;
and the voter is either compelled to vote the 'official
ballot' or not vote at all.   In such case, in the absence
of an affirmative declaration in the statute that a bal-
lot containing the name of a candidate in more than
one place is void, and shall not be counted, we are
unable to agree to the doctrine that an error of the
county clerk in construing a doubtful provision of the
law should disfranchise a large number of voters who
are in no way responsible for the error or mistake.
And such is the effect of the decisions under similar
ballot laws.   *Bowers v. Smith* (Mo. Sup.) (17 S. W.
Rep. 761, and 20 S. W. Rep, 101); *Allen v. Glynn* (Colo.
Sup.) (29 Pac. Rep 670); *Northcote v. Pulsford*, 44 Law
J. C. P. 217.   The law is 'mandatory,' in the
sense that it demands and requires the county
clerks, in the preparation of the 'official ballot,'
to strictly comply with all its provisions, but not in
the sense that a voter's right to exercise its elective fran-
chises will be lost, because of some technical mistake
of the county clerk in printing the names of candi-
dates upon the ballots.   Such a construction of the
law would not only render an election invalid on
account of an honest mistake of the county clerk, but
would open the door to the gravest fraud.   It would
place the power in the hands of a dishonest officer to
disfranchise the voters of his county, as well as cause
the defeat of any particular candidate.   To defeat the
will of the people or a particular candidate, it would
only be necessary to furnish the electors, or a part of
them, with ballots slightly variant or different from

those prescribed by 'law. Unless the law is clearly mandatory, or in some way declares the consequences of a departure from its provisions, the court ought not to defeat the will of the people, when fairly expressed, because of some technical error or mistake in the form of the ballot; and in this case there is no claim or suggestion of fraud on the part of any one, or that the returns now in the possession of the secretary of state do not correctly represent the will of the people, as expressed at the polls." There is an affirmative declaration in our statute, that none but official ballots shall be used or counted, and in that it is mandatory. There is, however, no affirmative declaration that official ballots, corrected as these were, shall therefore cease to be official ballots, nor that such ballots, when legally cast, shall not be counted.

For the reasons stated, we conclude that the judgment of the district court is correct. Our conclusion finds support in the following cases: *Bowers v. Smith* (Mo. Sup.) (17 S. W. Rep. 761); *Smith v. Harris* (Colo. Sup.) (32 Pac. Rep. 616); *State v. Russell* (Neb.) (51 N. W. Rep. 465); *State v. Van Camp* (Neb.) (54 N. W. Rep. 113); *Parvin v. Wimberg* (Ind. Sup.) (30 N. E. Rep. 790); *State v. Gay* (Minn.) (60 N. W. Rep. 676); *Sanner v. Patton* (Ill. Sup.) (40 N. E. Rep. 290); *State v. Walsh* (Conn.) (25 Atl. Rep. 1).—Affirmed.