P. H. Murphy v. F. N. Lentz, Appellant.

**Election contests:** APPEAL: TRIAL DE NOVO. On the appeal of an
1   election contest to the Supreme Court the cause will be tried
anew, under Code, section 1222, as amended by the Twenty-
eighth General Assembly.

**De facto officers.** One orally designated a deputy county auditor,
2   to whom the usual oath is orally administered and who there-
after performs the duties of the auditor, is a *de facto* officer.

**Election contest:** PRESERVATION OF BALLOTS. A *de facto* deputy auditor who received and cared for the returns of an election, at which he was a candidate for the office, will not be denied the right of a recount of the ballots in case of a contest, on the ground that the ballots were not legally preserved by him because he was not duly appointed and qualified.

**Same.** The provisions of the statute requiring ballots to be folded, wired and sealed are only directory, so far as they affect the result, and mere irregularities in respect thereto will not defeat the will of the electors.

**Same:** EVIDENCE. The evidence in an election contest is reviewed and held insufficient to support a contention that the ballots had been tampered with after they were deposited in the auditor's office.

**Same:** REMOVAL OF BALLOTS. Where neither party to an election contest either removed or assisted in removing the ballots from the auditor's office to that of the clerk they could not be affected thereby.

*Appeal from Chickasaw District Court.*— HON. L. E. FELLOWS, Judge.

THURSDAY, JULY 12, 1906.

THE parties hereto were opposing candidates for the office of auditor in and for Chickasaw County at the General election of 1904. Lentz was declared elected by the board of supervisors acting as canvassing board. Thereupon Murphy filed a statement of contest and upon trial before the court of contest was declared elected. Lentz then appealed to the district court where that decision was affirmed. He appeals.— *Affirmed.*

*M. E. Geiser* and *M. F. Condon,* for appellant.

*W. J. Springer* and *W. A. Smith,* for appellee.

LADD, J.— The parties stipulated that " a count of the ballots as they now appear if admissible in evidence shows a greater number of ballots for contestant than incumbent."

The remaining issue is whether the ballots have been so preserved as to indicate with reasonable certainty that when offered in evidence they were in the same condition as when cast by the electors. *Davenport v. Oelrich,* 104 Iowa, 194; *Mentzer v. Davis,* 109 Iowa, 528; *De Long v. Brown,* 113 Iowa, 370.

I.   Errors are neither assigned nor argued and appellee insists that the ·cause cannot be heard anew.   Nor could it have been prior to the amendment of section 1222 of the

1. ELECTION CONTESTS: appeal: trial de novo.

Code by the Twenty-eighth General Assembly by adding thereto the words: " The court shall hear the appeal in equity and determine all questions arising in the case."   It is argued that this merely eliminates the jury from such trials.   It does more.   It changes the proceedings from ordinary to equitable by specifically requiring that the hearing shall be in equity.   And having been so heard in the trial court the cause must be heard anew in this court.   The amendment then but recently enacted appears to have been overlooked in *Spurrier v. Mc-Lennan,* 115 Iowa, 461.

II.   The contestant, Murphy, had been the duly qualified and acting deputy auditor during the first term of the auditor, Fitzpatrick, who had been re-elected and qualified

2. DE FACTO OFFICER.

as auditor, but, though orally designating Murphy as his deputy and administering orally the usual oath to him there was no appointment in writing nor bond such as is exacted by section 481 of the Code.   Nevertheless he continued to perform the duties of deputy auditor up to the 1st Monday of January, 1905.   That he was deputy *de facto* during this period is not open to controversy.   *Buck v. Hawley,* 129 Iowa, 406; *Herkimer v. Keeler,* 109 Iowa, 683.

As such he received a part of the election returns and had access to them up to Monday after election, but nothing in his conduct was made to appear inconsistent with his duties as deputy auditor.   Appellant insists that the fact

that he was acting in an official position, however, cannot shield him for that the rights of third persons are not involved and neither justice nor necessity requires that his acts with respect to the reception and care of the ballots be upheld, as the acts of an officer.   If the premises were to be accepted undoubtedly he might not rely upon his acts as a *de facto* officer for protection, for he must be assumed to have been aware of his want of title.  Thus where an officer seeks to recover the emoluments of an office as in *People ex rel. v. Nolan,* 101 N. Y. 539 (5 N. E. 446), or to acquire funds to which as an officer he is entitled as in *People ex rel. v. Nostrand,* 46 N. Y. 375; or undertakes to justify his acts on the ground of being an officer as in *Short v. Symmes,* 150 Mass. 298 (23 N. E. 42, 15 Am. St. Rep. 204), he must do so by proof that he is an officer *de jure.*   This was well expressed in *Plymouth v. Painter,* 17 Conn. 585 (44 Am. Dec. 574), where it is said that " in a suit against a person for acts which he would have authority to do only as an officer he must in order to make out a justification, show that he is an officer *de jure;* because the title to the office, being directly drawn in question, in a suit to which he is a party, may be regularly decided; so where he sues for fees or sets up a title to property by virtue of his office he must show himself to be an officer *de jure.*"   See, also, *McCue v. Wapello Co.,* 56 Iowa, 703; *Fylpaa v. Brown County,* 6 S. D. 634 (62 N. W. 962).   In these cases the title to the office was directly in issue and whether the interest is personal or by virtue of an office in his possession the officer *de facto* is not permitted to assert the same in his own interest nor should he be for as said he must be assumed to have knowledge of his want of title.   But the contestant's right to exercise the duties of deputy auditor were not directly in issue, and the assumption that he alone was interested in the preservation of the ballots cannot be sustained.  Theoretically the public alone was interested therein, and actually it is a matter of

*3. ELECTION CONTEST: preservation of ballots.*

vital concern to the public that every contest over the incumbency of an office shall be determined justly and in accord with the will of the people as expressed in the voting booths. *Coglan v. Beard,* 67 Cal. Sup. 303 (7 Pac. 738).

The contestant had undertaken the duties of deputy auditor, and was bound to perform them honestly. This included the proper care of the ballots whenever that duty devolved upon him. Had the auditor been a candidate for re-election no one would pretend that he would have been disqualified from receiving and caring for the returns, or that, if he did so, he should for this reason only, be deprived of the advantage of a recount in event of a contest. Nor would any one think of inquiring into his title to the office then held in order to assail his official acts in relation to the election returns. Were it otherwise the acts of a *de facto* officer might have the effect of invalidating an election or as applied to himself of defeating the will of the people, the determination of whose choice is of far greater importance than the interest of any individual. The deputy auditor is in a like situation and in determining whether the ballots have been properly preserved the title of neither to his office is in issue. The public is primarily interested in their acts, and it is enough to endow them with all the sancity of official acts that they may be proven to have been performed by officers *de facto,* regardless of whether also officers *de jure.* Doubtless any interest in the election aside from that of every citizen is proper matter of consideration and will call for a closer examination of conduct with reference to the returns. See *Farrell v. Larsen* (Utah), 73 Pac. 227; *Hamilton v. Young,* 26 Ky. Law 447 (81 S. W. 682). But from this alone it cannot be inferred that the ballots have not been preserved in safety.

III. Some of the ballots were not folded, others not wired, and still others not sealed by the election officers as directed by the statute. These provisions, in so far as they bear upon the result, are directory in character. Mere ir-

regularities in not strictly pursuing them will not be per-
mitted to defeat the will of the electors. Mc-
Creary on Elections, sections 228, 236; *State
v. Bernholtz,* 106 Iowa, 157; *Cook v. Fisher,* 100 Iowa, 31.
Any possibility of prejudice owing thereto was obviated by
a stipulation that " the identical ballots cast at the several
voting precincts were the identical ballots delivered to the
proper messengers, and by them brought to the county au-
ditor's office the day after election, and that they were in
the same condition as when cast by the voters; and, further,
that the envelopes or cases containing the ballots were in the
same condition when they reached the auditor's office as
when delivered to the messengers, except such breakages or
abrasions, as to seals, if any, as might be made in handling."

IV.   The evidence does not warrant any interference
with the finding of the district court that the ballots when
offered in evidence were in the same condition with respect
to markings as when cast by the electors.
Twelve sacks containing the ballots of as many
voting precincts were received by the auditor
in the forenoon of the day after election.   These were placed
on the floor back of the counter of the auditor's office near
the vault.   He then went to dinner, leaving the county sur-
veyor, in the office.   Within a few minutes another sack of
ballots came in but had not been removed from the counter
when the contestant, as deputy auditor, took and placed it
with the others.   The latter received the remaining three
sacks, and, at about five o'clock in the afternoon, all were
put on the floor in the vault.   They remained there until
Saturday when they were piled on a shelf in the vault some
seven or eight feet from the floor.   The vault was six or
seven feet wide by four and one-half feet deep, was unlighted
save from the door, and without table, chair, or other articles
which might be used to write or stand on.   Persons exam-
ining the records brought them out in the office when this
was not done by the officer.   The entrance was in plain view

4. SAME.

5. SAME: evidence.

of the officers in any part of the office, and the sacks were of a material such that any handling of them would readily have been heard. If any reliance is to be placed on the testimony of the auditor and the acting deputy neither the sacks nor the ballots could have been touched during office hours. The inside door of the vault was locked by key of which there was no duplicate. This was carried by one or the other of these officers until Monday after election after which the auditor had sole charge of it. There was an outer door to the vault which had a combination lock. Upon closing the office at six o'clock one evening the auditor had taken the key so that the outer door only was locked. The deputy found him at about nine o'clock, and, returning with the sheriff, locked the inner door. There were no indications that any one had gained access in the meantime, though the fastenings of the windows to the office were not perfect and a person with assistance might have climbed through the transom. That at such an early hour any one, under the circumstances indicated, might have gained access to the ballots is the merest conjecture. We are inclined to concur with the finding of the district court that contestant was at church rather than in the auditor's office the first Sunday after election. Neither the ballots nor their recepticles bore any evidence of having been tampered with save possibly the defective ballots from Stapleton township. The envelope containing these could not be found readily during the trial before the court of contest, but immediately after the adjournment was discovered on the shelf by one of the judges who had been invited by the auditor to assist him. The envelope containing them was not sealed when found and the flap at the side was half torn off. Whether the envelope was sealed when received does not appear. Two of the ballots contained therein were counted for contestant, none for appellee; but whether the result was affected thereby is not disclosed by the record. In view of admission that packages had not been tampered with when received at the auditor's

office, and our finding that they had been properly kept there-
after, we are not inclined to say that, because of the defect
in the envelope alone, these ballots were not preserved as re-
quired.    The envelope might have been carelessly sealed, and
when dried, opened, and might have been torn in handling.
At any rate the inference to be drawn from the fact that it
was not in the condition exacted by statute was overcome
by this evidence of their care.    See *Martin v. Miles,* 40 Neb.
135 (58 N. W. 732).   The evidence as a whole is insufficient
to sustain a reasonable suspicion that the ballots may have
been tampered with.   Everything is said to be possible.   No
lock has been invented which is entirely secure against the
ingenuity of burglars.    It is all but impossible that any one
could have changed these ballots save the auditor or his dep-
uty.    There is nothing in the record to support a suspicion
as to either. of them, save that they had the opportunity.
But some one must be intrusted with the care of ballots.
The law has selected the auditor and those acting in his place
and stead as deputies, and as against them in the perform-
ance of duties, necessarily affording opportunity, mere op-
portunity is insufficient to raise a suspicion.

    V.    Section 1142 of the Code requires the ballots to
be retained in the auditor's office.    Immediately prior to
the induction of contestant in that office, they were removed to
the vault of the clerk's office.    No claim is
6. SAME: removal   made, but that they were securely sealed in
  of ballots.
sacks and a box by the judges of the court of
contest before removal and remained in that condition.
Neither party had anything to do with the removal and
though unauthorized, cannot be affected thereby.    As pointed
out in 'Cook v. Fisher, *supra,* the provisions of statute with
reference to the election officers upon whom duties are en-
joined are mandatory, but as to others they are directory for
the will of the people ought not to be defeated because of the
omission of some officer in the performance of a duty in no
way affecting the result.    The ultimate object of all the pro-

visions of the law with reference to the care of the ballots subsequently to being cast is their preservation as genuine, and, if this has been done, the mere irregularities of some officer cannot obviate their efficacy as the best evidence of for whom the elector cast his vote.

The judgment of the district court is affirmed.— *Affirmed.*