COLUMBUS CHAMBERS et al., Appellants, v. BOARD OF DIRECTORS, Appellees.

**ELECTIONS:** Ballots for Males and Females—Distinctions. Women
1 having, under Secs. 1131 and 2747, Code, 1897, the right to vote at certain stated elections, may use the same ballots used by the male electors. Distinctions in form, color or substance are not required.

**ELECTIONS:** Irregularities—Sufficiency to Invalidate. An irregu-
2, 4, 5 larity sufficient to render an election invalid must be such as to present an affirmative showing of prejudice. In a school election, *held,* the following irregularities were not of sufficient importance to render the election invalid, to wit: (a) That at times more than one elector, while preparing their ballots, occupied the same voting booth at the same time; (b) that electors handed unfolded ballots to the judges; (c) that a director and an elector acted as judges, instead of the president of the board and a director, as provided in Section 2746, Code, 1897; (d) that the polls were kept open *longer* than directed by statute. (Sec. 2754, Sup. Code, 1913.)

**SCHOOLS AND SCHOOL DISTRICTS:** Elections to Vote Bonds—
3 Advocacy by Directors—Effect. The official position of a school director in no wise prohibits such director from conducting a campaign in favor of a proposition then before the electors.

**ELECTIONS:** Irregularities—Sufficiency to Invalidate.
2, 4, 5

**SCHOOLS AND SCHOOL DISTRICTS:** Election Notices—How Given
6 —Hopeless Conflict of Statutes. Whether it be possible to harmonize Sec. 2746, Code, 1897, and Secs. 2750 and 2820-d3, Sup. Code, 1913, relating to the manner of giving notice of school elections, *quaere;* yet the latter section, being the last legislative expression on the subject and having been strictly followed, will prevail. So *held* in a school bond election controversy, wherein it appeared that notice of election was given by *publication* and not by *posting.*

**SCHOOLS AND SCHOOL DISTRICTS:** Election—Form of Notice—
7 **Interest Rate.** In submitting to the electors of a school district a
  proposition, under Secs. 2820-d1—2820-d4, Sup. Code, 1913, to bond
  the district for schoolhouse purposes, no necessity exists to state
  the rate of interest the bonds will bear.

*Appeal from Marion District Court.*—HON. W. H. FAHEY,
Judge.

WEDNESDAY, OCTOBER 27, 1915.

AN action in equity, brought by fifty-one resident tax-
payers of the Independent School District of Knoxville City
against the board of school directors, to enjoin the issuance,
negotiation or sale of school bonds apparently authorized by
a vote of the electors of the district, for the erection and
equipment of a new high school building at an expenditure
of $75,000. The trial court denied the prayer of the petition
and plaintiffs appeal.—*Affirmed.*

*Lorenzo D. Teter,* for appellants.

*Willard H. Lyon* and *W. G. Vander Ploeg,* for appellees.

DEEMER, C. J.—Some time prior to May 5, 1914, there
was presented to the defendant board of directors a petition,
signed by 181 resident voters of the school district, asking
that a special election be called, as provided by law, for the
purpose of voting on a bond issue of $75,000, to be used for
the erection and equipment of a new high school building.
Pursuant to law, the board of directors considered this peti-
tion and passed a resolution ordering such election to be held
on June 9, 1914, between the hours of 9 A. M. and 6:30 P. M.,
at the courthouse in the city of Knoxville. The resolution
concluded as follows:

"On motion of Harrington, seconded by Ames, it was
ordered that the prayer of petition be granted, and that a
special election be called, the same to be held at the court-

house, the polls of election to be open from nine o'clock A. M. until six-thirty P. M., on Tuesday, June 9, 1914, at which time and place the following proposition shall be submitted to the electors of the district, and to any and all other persons who may be entitled to vote at said election."

Notice of the election was published in a newspaper of the city of Knoxville, and from that notice we extract the following:

"At this election all residents of the school district, male or female, over twenty-one years of age will be entitled to vote. This notice is given by order of the board of directors of the Independent District of Knoxville City, Knoxville, Iowa, by resolution passed by said board on the 5th day of May, A. D. 1914."

An election was held at the time and place specified, participated in by both men and women, and thereat 601 men voted, 298 being for the proposition and 303 against; 391 votes were cast by women, and of these, 230 were for the proposition and 161 against, making a total majority for the issuance of the bonds of 64. The judges of the election were W. O. Robinson, a member of the school board, and one Nate Rockafellow, who was not a member; and Mr. Gilson, secretary of the board, acted as clerk. During a part of the noon hour, Dr. E. R. Ames, a member of the school board, relieved the judges for about fifteen minutes; and while they were absent, he received a few votes, the clerk Gilson being at all times present. There were five members of the school board at this time, James L. Clark being president. The president did not act at any time as one of the judges, but Rockafellow was appointed by the board to serve with Robinson as one of the judges; and the secretary of the board, Gilson, was selected as clerk of the election. At different times, as many as three or four women occupied a single election booth in preparing their ballots, and some of them offered the judges

of election sample yellow ballots; but the preponderance of the testimony shows that these were returned to the voters and did not get into the ballot boxes. Practically all the members of the board took an active interest in securing an affirmative vote upon the proposition; they circularized the district, hauled electors to the polls and conducted a regular campaign. One vote was cast by a nonresident; and something like nine women under the age of twenty-one voted at the election, although all the notices and all the information emanating from the school board specifically stated that women as well as men should be at least twenty-one years of age. None of these women voters were challenged; and, so far as shown, neither the judges nor the clerk of election knew that anyone who tendered his or her vote was under the age of twenty-one years. Many of the votes handed to judges were left unfolded, and some were so insecurely folded that the judge receiving them had full knowledge of how the elector voted. If the ballot were open, it was almost impossible for the judge not to see how the vote was intended; and, save in a single instance, there is no testimony to show that the judge used the information which he gathered from the ballot, and that instance is denied by the judge. Separate boxes for men and women were used for receiving the ballots, but the ballots were the same in form, color and substance. In one instance, a vote handed to a judge by a woman was placed in the men's box, but the next vote cast by a man was placed in the women's box.

It is also claimed that there was no need for a new building; that to erect it upon the old grounds, as proposed by the board, would mar and disfigure them; that what was really needed was an addition to the old schoolhouse, which was so planned in the beginning that it could easily be enlarged by an addition costing not more than $30,000, answering all the purposes of students present and prospective, and preserving the beauty and harmony of the grounds.

These are the facts, as we gather them from the record,

and the propositions most seriously relied upon for restraining the issuance of the bonds are:

(1) That the election was held from 9 A. M. to 6:30 P. M., whereas, under the law, it should have been held from one to six P. M.

(2) That the notice of election should have been posted by the secretary in at least five public places in the district, instead of published in a newspaper.

(3) That the election board should have consisted of the president, one of the directors and the secretary, instead of one member, an elector chosen by the board and the secretary as the clerk.

(4) That in none of the resolutions and notices or other proceedings was the rate of interest which the bonds should bear stated, or any statement as to whether or not they would bear interest.

(5) That women were not entitled to vote at such an election.

(6) That separate ballots should have been given to women.

(7) That not more than one voter, man or woman, should have been allowed in the booths at any one time.

(8) That the secretary of the school board should not have been permitted to act either as judge or clerk.

Counsel very properly inferentially concede that the merits of the proposition cannot be considered on this appeal, no matter what the needs or wants of the school district, or the esthetic features of the case.

Of the propositions relied upon by the appellants, several may be summarily disposed of as without merit. Of these are the claims that women are not entitled to vote at such elections; that distinct and separate ballots should have been provided for men and women; that more than one elector was in a booth at a given time preparing his or her ballot; that the members of the board of directors conducted

1. ELECTIONS: ballots for males and females: distinctions.

an active campaign for the proposition and conveyed electors to the polls. The statute (Code Sec. 2747) seems to provide, and we have held, that women are entitled to vote at such elections. *Coggeshall v. City of Des Moines,* 138 Iowa 730-742. And while the statute (Code Sec. 1131) provides, in substance, that separate ballots shall be furnished to women for questions on which they are entitled to vote, this does not necessarily mean that they must be distinct either in form, color or substance. At an election like the one here involved, the same ballots may be used by electors of either sex, but they must be deposited in separate boxes. There is

2. ELECTIONS: irregularities: sufficiency to invalidate.

no provision of law invalidating an election because there was more than one voter in a booth at any given time. This is a mere irregularity, not affecting the validity of the election, in the absence of some showing of prejudice. And we may also say, in this connection, that the conduct of electors in handing unfolded ballots to the judge or judges does not affect the validity of the election. If a voter is disposed to disclose to the judges or to others how he voted, we know of no reason why this should invalidate the election. All this is said without reference to whether or not the Australian Ballot law applies to such special school elections as are here involved. *State v. Bernholtz,* 106 Iowa 157; *Cook v. Fisher,* 100 Iowa 27-31; *Kinney v. Howard,* 133 Iowa 94. The members of the board of directors are not prohibited, because of their official position, from taking an active interest in the election, or from conducting a campaign in favor of the proposition. They did not, by accepting positions as members of the school board,

3. SCHOOLS AND SCHOOL DISTRICTS: elections to vote bonds: advocacy by directors: effect.

surrender any rights which they had as citizens. Their familiarity with the wants and needs of the district justified them in making such a campaign as they thought the needs of the district demanded.

II. While the law seems to provide that the president and secretary and one of the board shall act as judges of

election (Code, Sec. 2746), the judges who were selected were

**4. ELECTIONS: irregularities: sufficiency to invalidate.**

at least *de facto* officers, and the election should not be invalidated because of irregularities in the manner of their selection. The rule universally adopted is that irregularities in the selection of election judges will be disregarded unless prejudice be shown. 15 Cyc., 311, 312; Mechem on Public Officers, Sec. 184. If this were not the rule, substance would be subordinated to shadow; and mere technicalities would thwart the will of the people.

III. That the election was held from 9 A. M. to 6:30 P. M., instead of from 1 to 6 P. M., was also a mere irregularity. The case differs essentially from one where the polls

**5. ELECTIONS: irregularities: sufficiency to invalidate.**

are held open for too short a time, and there is reason to apprehend that someone entitled to vote was deprived of the right to do so, because of lack of time. Here the election was held from 1 to 6 P. M., and the mere fact that the polls were also held open for four hours before 1 P. M. and for half an hour after 6 P. M. was surely nonprejudicial. This proposition is settled by *District Township of Lincoln v. Independent School District of Germania*, 112 Iowa 321.

IV. The most serious question in the case relates to the notice given of the election. The contention here made brings to our attention the chaotic condition of our school

**6. SCHOOLS AND SCHOOL DISTRICTS: election notices: how given: hopeless conflict of statutes.**

laws. In them are many inconsistent and conflicting sections, and it is ofttimes almost impossible to harmonize them or to state with any degree of preciseness the legislative intent. Coming down to the crucial question before us, we find that in one section of the law there is a provision that notices of both annual and special elections must be given by posting (see Secs. 2746; Code, and 2750, Code Sup., 1913); yet Sec. 2820-d3 of the same supplement says that the notice of such an election as was here held shall be by publication. The only way to harmonize these is to

say that the first two relate to other than independent districts and the last to independent districts, or to independent districts under certain conditions which are here present—that is to say, to the creation of certain indebtedness. But if they cannot be harmonized, the last section is the last expression of the legislature applicable to such elections as are here involved, and, being the last, all former statutes with reference to the same subject inconsistent with the latter one are, by implication, repealed. Whichever view be taken, as defendant followed the law as found in Secs. 2820-d1, 2820-d2, 2820-d3 and 2820-d4, Supplement to the Code, 1913, the published notice must be upheld.

V. There is no requirement anywhere that the resolution or the notice state the rate of interest. Indeed, as the law provides (Sec. 2812-e, Sup. Code, 1913) that the bonds shall draw not more than 5 per cent. interest and be sold at par, there seems to be no necessity for covering the matter in the resolution or notices. Some leeway may be given the directors to negotiate for a less rate of interest; and, if the statutory rate is not exceeded, bonds may be issued bearing such rate as the board may determine. We are agreed with the district court in holding that there were no such irregularities as to invalidate the election, and the decree is therefore—*Affirmed.*

7. SCHOOLS AND SCHOOL DISTRICTS : election : form of notice : interest rate.

WEAVER, EVANS and PRESTON, JJ., concur.