E. B. TYLER, Contestant, Appellee, v. H. G. KLAVER, Incumbent, Appellant.

No. 43184.

DECEMBER 17, 1935.

Sterling Alexander and F. J. Lund, for appellant.

Burnstedt & Hemingway, for appellee.

PARSONS, J.—At the election of 1934 in the Third supervisor district of Hamilton county, there were three candidates for supervisor; E. B. Tyler, a Republican candidate, H. G. Klaver, as an Independent candidate, and Charles Greiner, a Democratic candidate. There were six townships in this supervisor district, and six voting precincts, each township being a voting precinct. The precincts were Blairsburg, Liberty, Lincoln, Lyon, Rose Grove, and Williams. The result of the election was certified to by the proper officials of the various precincts named to the county auditor as required by law, and these returns were canvassed by the board of supervisors of the county. The result of the canvass set forth shows the voting precincts, the names of the candidates, and findings from the returns sent from the various voting precincts:

| Names of Townships or Voting Precincts | Charles Greiner | E. B. Tyler | H. G. Klaver |
|---|---|---|---|
| Blairsburg | 87 | 53 | 148 |
| Liberty | 39 | 75 | 124 |
| Lincoln | 21 | 259 | 130 |
| Lyon | 80 | 263 | 269 |
| Rose Grove | 25 | 66 | 76 |
| Williams | 65 | 188 | 163 |
| | 317 | 904 | 910 |

On November 13, 1934, the board of supervisors adopted the foregoing canvass and declared H. G. Klaver elected supervisor of the district. A contest was commenced by Tyler, who

is designated in this record as contestant and appellee. There is no question raised about the validity of the contest court. That court consisted, as provided by statute, of three members, and it found that Greiner received 304 votes, Tyler 907 votes, and Klaver 901 votes. One of the judges of the contest court, Hefner, dissented, claiming Greiner received 313 votes, Tyler 902 votes, and Klaver 908 votes. From this finding of the contest court, Klaver appealed to the district court of Hamilton county, Iowa. That court, after hearing the case, found that Greiner had received 304 votes, Tyler 905 votes, and Klaver 897 votes, and awarded the office to Tyler, in accordance with this finding. In the finding, of the district court, on the facts, the following was found:

"In the presentation of this case, there were certain ballots that were separated in the recount before the Contest Board, being 54 in number, that were recognized by the parties hereto as the disputed ballots. These ballots were each marked with an exhibit number or letter by the Contest Court, and by agreement of counsel made in open court, these same exhibit numbers and letters were retained in this appeal; and it was stipulated in this case as to each precinct that if the ballots of the different precincts were counted, outside of and without the contested ballots, they would show that the different candidates for Supervisor of the Third Supervisor District of Hamilton County, Iowa, would receive the following votes:

| | Greiner | Tyler | Klaver |
|---|---|---|---|
| Blairsburg | 84 | 53 | 146 |
| Williams | 65 | 188 | 158 |
| Liberty | 38 | 75 | 120 |
| Rose Grove | 25 | 62 | 73 |
| Lincoln | 14 | 249 | 124 |
| Lyon | 78 | 265 | 261 |
| | 304 | 892 | 882" |

The court also found that all of the ballots from the supervisor district of Hamilton county, from all the precincts, have been preserved and returned as provided by law, and are entitled to be received as evidence in this appeal. That all of these ballots were brought in their cases and containers to the auditor's office in Webster City, Iowa, by an election officer of the precinct wherein the ballots were cast, who were sworn

officers to do their duty, and the presumption prevails they did their duty honestly, no evidence is produced to show to the contrary, and it was the presumption they were delivered to the auditor in the same condition they were at the time cast by the voters.

It was further found:

"The evidence is also without dispute that the Auditor promptly placed them in the vault adjoining his office, and that at all times from that time down to the time they were produced in the Contest Court, they were under the supervision and control of the Auditor and were not exposed to the public, and that no opportunity was given for tampering with them; and the Court finds that the ballots themselves are competent evidence in this case and in this appeal, and that the same have been preserved and produced in Court, all as provided for and contemplated by law."

Upon counting the ballots, the court found that on the count of the contested ballots 24 were rejected. Tyler received 15, and Klaver 15, the result being as found by the court, that Greiner received 304 votes, Tyler received 907 votes, and Klaver received 897 votes. That E. B. Tyler, the contestant, received the highest number of votes for the office of supervisor. It was accordingly ordered, adjudged, and decreed that E. B. Tyler be declared to be duly qualified and elected to the office of supervisor of the Third district of Hamilton county for the term commencing January 1, 1936; and that E. B. Tyler is entitled to and there shall be forthwith issued to him a certificate of election to said office, and that in the event the certificate of election has been issued to Klaver certifying his election, it shall be void and held for naught, and that the certificate be forthwith issued to the incumbent Tyler. To all of which Klaver excepted. From this judgment in due time, an appeal was perfected to this court.

 So the question naturally arises as to the preservation of the ballots and as to their admissibility in evidence. The appellant in this case objects practically to each and every ballot on the theory that they were not kept as provided by law, and consequently are not admissible in evidence. The objection even goes back to the ballots prior to their delivery to the county auditor following the election, and while they were in the hands

of the election officers of the various precincts involved in this count. A case cited and relied on, and which looks to be the basis of this objection, is Furguson v. Henry, 95 Iowa 439, 64 N. W. 292, 693. That case holds that a showing that the ballots came through the channels and from the custodians provided by law for their keeping makes such ballots *prima facie* evidence. This may be met with proof that they are not as they were cast and counted. So, under the authority of the cited case, a showing that the ballots "came through the channels and from the custodian provided by law", makes them *prima facie evidence*. In this case the record shows that the ballots from the various precincts were delivered by election officers to the county auditor. That is in strict conformity to the law. Being *prima facie* admissible in evidence, they may be impeached by showing they were not in the condition when cast; i. e., had been tampered with while in the hands of the election officers, and prior to the delivery to the county auditor.

DeLong v. Brown, 113 Iowa 370, 85 N. W. 624, cited by the contestant, among other things, says:

"The statute requires the auditor to carefully preserve the ballots received from the judges of election for six months. Section 1142, Code. The particular manner or place is not pointed out. If carefully done, this precludes any reasonably well founded suspicion that they may have been changed or tampered with, and in such event they form the best evidence of who has been elected. With their integrity thus fully established, they are silent witnesses which can neither err nor lie. And it is generally held, where the manner or mode of preservation has been enjoined by statute, a substantial compliance therewith must be shown, preliminary to the introduction of ballots in evidence."

Let us apply this analysis to these ballots before they came into the hands of the auditor, bearing in mind that they were delivered by the election officers to the auditor. Chapter 41 of the Code (section 840 et seq.) deals with the canvass of votes. By section 850, when the canvass of votes is completed, one of the judges shall publicly announce the total number of votes received by each of the persons voted for, the office for which he is designated, as announced by the clerk. Then follows the provision in section 851 in regard to folding and stringing the

ballots, and as to rejected, defective, or objected-to votes. And by this same section it is provided that "the judges shall at once return all the ballots to the officer from whom they were received, who shall carefully preserve them for six months." The officer from whom they were received was the county auditor, because the statutes so direct. He has the distribution of all the ballots to the various precincts in the county, and after election the ballots are delivered to him. So then the showing that the ballots were taken by one of the election officers to the county auditor shows that so far there has been compliance with the statute, and, if any irregularity is claimed, it must be by an affirmative showing of something done prior to the time they reached the auditor's office, so far as an objection of the validity of the ballots reaching back of the auditor's results. When they get to the auditor's office, he is to preserve them carefully for six months.

In the De Long case the court held that there was no such keeping as is shown in this case; that there was every opportunity to tamper with the ballots, and hence for the negligence in preserving the ballots they were rendered incompetent in the election contest, and this is the rule that has been adopted and followed ever since.

In a late pronouncement of this court upon the question as to the preservation of the ballots is Marsh v. Huffman, 199 Iowa 788, 202 N. W. 581, 585, and in that case this court said:

"While we have said that it must affirmatively appear that the ballots had been preserved with that jealous care which precludes the opportunity of their being tampered with, and like Caesar's wife, must be shown to be above suspicion, yet we have also said that they need not be so shown beyond groundless suspicion, nor that there is no possibility that they might have been tampered with."

Some question is made about folding and wiring the ballots, but the Marsh case, citing Murphy v. Lentz, 131 Iowa 328, 108 N. W. 530, said:

"This statute is only directory, and a failure to comply therewith will not defeat the will of the electors."

Here, however, the district court specifically found that the ballots were under the supervision and control of the auditor

and were not exposed to the public, and that no opportunity was given for tampering with them, and that the ballots themselves were competent evidence. An examination of the record here discloses that it fully supports the finding of the lower court on this question. True, the auditor was not in the vault all the time with the ballots, neither were any of his clerks. People went in and out of the vault, but they were in there only a few moments at a time, without being under the observation of the auditor or his associates. We think the meticulous care of the ballots shown here shows there is nothing in the objections in this case that rendered the ballots incompetent.

A canvass by the board of supervisors is not a canvass of the votes, but it is simply a canvass of the returns sent in by the officers of the various election precincts. So it is the conclusion arrived at by the various election boards in the supervisor district. Where ballots are counted hurriedly, where it is conceded even if everybody is honest, mistakes may be made in counting when it is carried on to the middle of the night.

The writer of this opinion very well remembers the election contest between Steck and Brookhart concerning a seat in the United States Senate. In that case the returns after the canvass had been made by the various election boards, certified by the board of supervisors, there tabulated and passed on to the secretary of state's office, and a certificate issued to Brookhart on the assumption from these records that he had 800 plurality, yet a contest was thought advisable for the reason that conceding each and every election judge and clerk had been honest, as the counting of the ballots was carried on sometimes until long after midnight, and sometimes even until daylight; that the mark in the circle at the top of the ballot would be seen while the small cross opposite the name of the individual might easily be overlooked, and that there being something over a million voters in the state of Iowa, it would take only 400 cases of these overlooked ballots to be found to make it a tie, because sometimes the marking in the circle over the Brookhart ticket was accompanied by a small cross in the square before the name of Steck, and that might not have been observed.

So the real aim in election contests is to see who received the most votes for the office in question. We have carefully gone over the record in this case and agree with the court below that the record affirmatively shows no tampering with the votes

after they reached the auditor's office. That the record affirmatively shows the proper officers brought the ballots to the auditor's; that there is nothing to impeach them prior to reaching the auditor, and the auditor having carefully preserved them as provided by law, they should be received in evidence, and were so received, and the result of the count was, as has been the case frequently with the party found to be elected on the face of the returns, that he was found not to have the greater number of votes.

Therefore, for the reasons pointed out in this opinion, the decision of the lower court in holding that the contestant and appellee Tyler received more votes for member of the board of supervisors of the Third district of Hamilton county than did the incumbent appellant, the action of the district court is affirmed.

KINTZINGER, C. J., and POWERS, ANDERSON, RICHARDS, DONEGAN, and ALBERT, JJ., concur.