JAMES S. ANDREWS v. THE JUDGE OF PROBATE OF OTSEGO COUNTY.

*Constitutional law—Elections—Statute for recount of votes—Peti tion of contestant—Laches.*

1. Act No. 293, Laws of 1887, providing for a recount of ballots on the petition of a candidate who intends to contest the election, while not in conflict with the Constitution, is too defective to be carried into execution unless by common consent, in this:

   *a*—No provision is made for the appointment of a time when the board of examiners will be appointed, or for notice to the successful candidate to appear and take part in the formation of the board.

   *b*—There is no provision for a case where the examiners appointed refuse to serve, nor any requiring them to take an oath before proceeding to the discharge of their duties.

   *c*—The act should require the inspectors intrusted with the key and election seal, as well as the clerk, to appear before the board of examiners.

2. A petition to the judge of probate by a candidate desiring a recount under Act No. 293, Laws of 1887, must show who the board of canvassers have decided is elected to the office, in order that notice of the contest may be given to him.

3. A citizen of a county is not necessarily an elector, but an elector must necessarily be a citizen of a county in which he resides.

4. It is a primary rule of elections that the ballots cast by the voters constitute the best, and are the primary, evidence of the intention and choice of the voters.

5. When it is made to appear that, as between the identical ballots themselves, one candidate for a particular office has more ballots than another, such ballots are controlling, and a mere count determines the result; but, in order to have this effect, it must be shown that the ballots have been duly preserved in the manner provided by the statute, and protected from any unauthorized intermeddling or tampering.

*Mandamus.* Submitted February 5, 1889. Denied February 6, and opinion filed February 20, 1889.

Application for *mandamus* to compel respondent to continue certain proceedings pending before him under Act No. 293, Laws of 1887, for a recount of the votes cast for prosecuting attorney of Otsego county. The facts are stated in the opinion.

*James S. Andrews*, in *pro. per.*, and *F. L. Dodge*, for relator.

*C. D. McEwen*, for respondent.

CHAMPLIN, J.   On January 14, 1889, the relator filed his petition in this Court, setting forth that he was a candidate for the office of prosecuting attorney of Otsego county at the general election held on November 6, 1888, and received votes for said office; that on December 26, 1888, he filed a petition with the judge of probate of that county, under Act No. 293, Laws of 1887, setting forth the above facts, and that he had good reason to believe, and did believe, that there was both error and fraud in the count, or in the returns of inspectors of election, in the following townships, viz., Charlton, Hayes, Otsego Lake, Dover, Bagley, and Livingston, and that there was error in the count, or the returns of the inspectors of election, in the towns of Elmira and Corinth, all in the county of Otsego, and that it was his *bona fide* intention to contest the said counts, and returns of the inspectors of election; and that he believes that unless the ballot-boxes of said townships are opened, and the ballots therein counted, without unnecessary delay, his rights will be jeopardized.   He also deposited $30 with the probate judge.   Upon the filing of the petition, the relator and the probate judge proceeded *ex parte* to select two members of the board of examiners; the relator selecting one, and the judge of probate another.   The judge of pro-

bate then issued a citation, directed to the township clerks of the several townships by name, as follows:

"Whereas, James S. Andrews, Esq., of said county, has filed a petition with this court, the same being verified, stating that it is his *bona fide* intention to contest the election of the office of prosecuting attorney for said county, and further petitions this court that the ballot-boxes be opened, and the ballots therein be counted, without unnecessary delay.

"Therefore, in the name of the people of the State of Michigan, you are hereby cited and required personally to ·be and appear at the office of the judge of probate in the village of Gaylord on December 31, A. D. 1888, at 11 o'clock A. M. And you are hereby further ordered to bring with you the ballot-box of your township, containing all the ballots cast in said township on November 6, A. D. 1888; also bring with you the seal and key of said ballot-box, and deliver the same to me, to be opened by the board of examiners according to law in such case made and provided. Hereof fail not.

"Given under my hand and seal of the probate court the 26th day of December, A. D. 1888.

"THOMAS C. WOODIN,
"Judge of Probate."

Copies of this citation were placed in the hands of the under-sheriff of the county for service, and also a copy of the petition and order were delivered to the under-sheriff to be served upon the opposing candidate for the office of prosecuting attorney.

The relator further alleges that at the time and place stated in said citation some of the township clerks appeared, and also the two examiners selected as before stated, and also the other candidate for the office of prosecuting attorney, who threatened the township clerks that, if they opened the ballot-boxes, he would cause them to be arrested, and so intimidated them that the probate judge adjourned the hearing to January 2, 1889, at 11 o'clock, at the same place, at which time Thomas

Carney, the probate judge elect, having qualified, took possession of the office, and refused to proceed further in the matter, whereupon the relator filed his petition in this Court for a *mandamus* to compel him to proceed under the statute.

The present judge of probate has filed his return to relator's petition, in which he shows cause against being compelled to proceed further in the matter, for the reasons following:

1. That the proceedings to bring said petition and the matters therein contained before the court were irregular, and not in conformity with said act.

2. That the citation issued by his predecessor was void, inasmuch as neither time nor place had been fixed for the parties interested to appear and select the examiners contemplated by said act, and no notice such as the act requires was given to the examiners to appear and proceed in the discharge of their duties.

3. That such citation was void, inasmuch as it required the township clerks to bring the ballot-boxes, together with the keys and seals, of which keys and seals the clerks had no legal right of custody.

4. That the act did not confer upon the judge of probate and the examiners named any jurisdiction over the keys or seals of the ballot-boxes, or the persons in whose hands the said seals and keys were by law placed.

5. That the ballot-box for the township of Bagley, together with the key and seal, has, ever since the election up to about the time of filing the petition, in violation of law, been in the hands and under the control of one Andy Powell, the son-in-law of the relator, as town clerk of the town of Bagley at the time of the election; that two members of the board of inspectors of election met on November 7, 1888, in the absence of the third inspector, and opened the ballot-box of the township of Bagley, and recounted the ballots cast for the office of prosecuting attorney, although, after the close of the polls at the election held on November 6, 1888, the board of inspectors had publicly canvassed and counted the votes cast for all the officers at such election, and publicly declared the result, after which they replaced the ballots in said ballot-box, and sealed the same with the

election seal, and then adjourned until November 7, 1888, and at such recount they made a difference of several votes in favor of relator.

6. That the ballot-box for the town of Otsego Lake, together with the key and seal thereof, were in the control of one Adam Assel, the town clerk of said township; that on the evening of December 31, 1888, when he came to Gaylord in obedience to the citation, he entered the drug-store of one Charles Bahel, in the village of Otsego Lake, with said ballot-box and election seal in his possession; that the seal on the box had been broken, and then and there in said store he fixed the seal by melting the wax comprising the seal where it had been broken, and then departed with relator in a cutter for Gaylord, a distance of eight miles.

7. That the relator has been guilty of unreasonable delay in filing his petition.

8. That the said act is unconstitutional and void for the following reasons:

1. The object of the act is not indicated by its title.

2. It undertakes to create a judicial tribunal unknown to the Constitution, and make the determination of such tribunal final and conclusive on the rights of parties, without acting under the sanction of an oath, and without affording an opportunity to the parties interested to be heard upon the important question of fact as to the number of legal votes cast for the different candidates for office, and this, without any power vested in such tribunal to summon or examine witnesses or take proof upon any question of fact involved in the election.

9. That the mode of proceeding provided for under said act is so obscure, indefinite, and uncertain as to nullify the act and defeat its purpose.

These reasons, it will be seen, are directed against—

1. The proceedings had before and by his predecessor.

2. The illegal action of the board of inspectors in recounting the ballots the next day after the election, and misdoings of the town clerk of another township, and non-observance of the statute in reference to the custody of the ballot-boxes, keys and election seals.

3. The invalidity of the act under which the proceedings were had, and the uncertainty and insufficiency of the act in not providing for the manner of procedure under it.

1. The petition of relator does not show that the canvassers had made a decision and declared that any person had been elected to the office of prosecuting attorney. The statute only permits a candidate to proceed under the act after the decision of the board of canvassers, and the petition to the · probate judge should state who the board of canvassers had decided was elected to the office, in order that notice of the contest may be given to him.

The petition for *mandamus* states that, on presenting the petition to the judge of probate, the petitioner selected one Ansel W. Bates, a citizen of said county, a member of said board of examiners, and the judge of probate selected one Jesse M. Branch, a citizen of said county, one other member of said board of examiners. This action is not in accordance with the act. That act provides that the board of examiners shall consist of three persons, who shall be electors of the county in which the proceedings are had,—one appointed by the candidate presenting such petition, one by the candidate opposed thereto, and one by the judge of probate. There is a marked distinction between a citizen and an elector of a county. A citizen is not necessarily an elector, but an elector must necessarily be a citizen of a county in which he resides. The relator does not show that the persons selected were qualified to act as members of the board of examiners.

2. It is a primary rule of elections that the ballots cast by the voters constitute the best, and are the primary, evidence of the intention and choice of the voters. *Hudson v. Solomon,* 19 Kan. 177; *Reynolds v. State,* 61 Ind. 423; *People v. Tisdale,* 1 Doug. 59; *People v. Higgins,* 3 Mich. 233; *People v. Woodhull,* 14 Id. 28; *Keeler v. Robertson,* 27 Id. 116; *People v. Cicott,* 16 Id. 283; *People v. McNeal,* 63 Id. 294 (29 N. W. Rep. 728); McCrary,

Elect. § 439; Cooley, Const. Lim. 625. When, therefore, it is made to appear that, as between the identical ballots themselves, one candidate for a particular office has more ballots than another, such ballots are controlling, and a mere count determines the result; but, in order to have this effect, it must be shown that the ballots have been duly preserved in the manner provided by the statute, and protected from any unauthorized intermeddling or tampering. 'Act No. 293, authorizing a recount of the ballots, proceeds upon the presumption that the ballots, in the mean time, have been kept, and the safeguards provided by law against fraud and unlawful interference have been observed. But in cases where, as the return in the case shows, the ballot-boxes, the keys, and the seals have not been so kept, the act never contemplated that the recount should be conclusive evidence of the ballots cast at the election, while it may be conclusive evidence of the ballots contained in the box at the time of such recount. A party is not prevented, in a subsequent contest, from showing that ballots were illegally cast, or that the boxes have been tampered with since the result was declared by the board of inspectors.

3. We do not think the act is unconstitutional through any defect of title. If it confers judicial powers upon the board of examiners, to that extent it is invalid. The Constitution vests the judicial power in certain specified courts, and it cannot be legally vested elsewhere. If this act confers upon the board of examiners authority to investigate and adjudicate upon any fraud in the election, it cannot be sustained in that respect. The board of examiners are authorized, and it is made their duty, to count the ballots in the boxes designated by the contestant, and make a statement of the result of the count, and each member is required to sign the same, and swear to it before the judge of probate, and the statement is then

to be filed in the office of the county clerk, and the statute then says that it—

"Shall be conclusive evidence· in any subsequent proceeding at law of the ballots cast in boxes so opened."

The statute further provides that,—

"Whenever a contestant, in the opinion of the board of examiners created under this act, establishes the truth of his allegations in his petition for a recount,"—

The fee of $30 shall be returned to him, and, if he does not establish the truth of his allegations, the fee shall be paid into the contingent fund of the county. Does this law contemplate that the board of examiners shall pass upon the allegations set up in the petition? The statute says that he shall set forth in his petition—

"That he has good reason to believe, and does believe, either—*First*, that there was error or fraud in the count, or in the return of the inspectors of elections; or *second*, that there was error or fraud in the count or determination of the board of canvassers; or *third*, that there was error or fraud in both."

We think it plain that the investigation is confined solely and exclusively to ascertaining the number of ballots which are contained in the ballot-box for the person whom the canvassers have declared elected, and the opposing candidate. If the result is found to differ from the result declared by the inspectors, it shows that there was either error in the count made by the inspectors, or a false or fraudulent return made by them. The act does not contemplate that the board of examiners shall take testimony relative to any fraud committed by the board of inspectors or others; but the duties prescribed are purely ministerial, and confined, as above stated, to a recount of the ballots. In doing this, and stating the result, no judicial act is performed by the board of canvassers.

The act, while not conflicting with the Constitution, is too defective to be carried into execution unless by common consent. After a petition is filed with the judge of probate, the first thing that should be done is to appoint a board of examiners. No provision is made for the appointment of a time when the board of examiners will be appointed, or for notice to the successful candidate to appear to take part in the formation of the board. There is no provision for a case where those appointed refuse to serve; none requiring such examiners to take an oath before proceeding to the discharge of their duties. The statutes require the inspectors of election, after they have counted and declared the result, to replace the ballots in the ballot-box, close and lock the same, and place a covering of leather over the hole for the insertion of ballots and the key-hole, in such manner as to completely cover both holes, and to securely fasten the same with sealing wax, stamped with the official election seal of the town or ward. The key is to be delivered to and kept by one of the inspectors of election, the election seal to another inspector, and the ballot-box to the township or city clerk, who shall keep the same in his office until the next election, subject only to the inspection of the proper authorities in case of a contested election. Act No. 296, Laws of 1887. This act is defective in not requiring the inspectors intrusted with the key and election seal, as well as the clerk, to appear before the board of examiners. As before observed, the act presumes that the ballot-boxes have been kept in compliance with law, with the key and election seals in possession of the proper officers; but it does not undertake to make the statement made of the recount conclusive evidence of anything except of what the boxes contain at the time such recount was had.

We regard the object of the law as beneficial for the

purpose of preserving the evidence of the contents of the ballot-boxes; but to be effective, and to avoid as much as possible the possibility of tampering with the ballot-boxes, we think the law requires a speedy resort to its proceedings, or, in the language of the statute, "without unnecessary delay," and we think the relator in this case is guilty of inexcusable laches in not applying sooner. These proceedings are purely statutory, and hence the necessity for providing in the statute all the necessary steps required to be taken in order to effectuate the object of the statute.

The *mandamus* is denied

The other Justices concurred.