Baker v. Dinsmore.

---

CASE 38—PETITION BY S. R. BAKER AGAINST J. W. DINS-
MORE TO CONTEST AN ELECTION.—May 6, 1910.

## Baker v. Dinsmore.

Appeal from Madison Circuit Court.

J. M. BENTON. Circuit Judge.

Judgment for defendant, plaintiff appeals.—Reversed.

1.  Elections—Legality of Votes—Sufficiency of Evidence.—In an
    election contest, evidence which merely tends strongly to

Baker v. Dinsmore.

a suspicion that certain votes were illegally cast is not sufficient to throw out the ballots.

2. Elections—Ballots—Judication of Choice.—Where the candidates in an official ballot under two party devices are for different offices, and there are no. opposing candidates therein, a ballot which is marked as a vote for a straight ticket under each device is valid.

3 Elections—Contests—Right to Recount of Votes.—Where, in an election contest, petitioner asks for a recount of the votes, but does not make any showing that the ballot box has been kept as required by the statutes, nor that the ballots had not been tampered with since the election, nor that the ballots offered were identical with the ones cast, the court has on objection no authority to make a recount.

4. Elections—Validity of Ballots—Voting Two Tickets.—Where, on an official ballot under the Republican device, there are six candidates for six offices of councilmen, and under the Citizens' ticket device there are two candidates for councilmen, a straight ticket mark under each device makes the ballot void, since it is impossible to tell what candidates were voted for.

5. Elections—Ballots—Marking Blank Space.—A ballot stamped in the small square under the Republican device, at the top of the ticket opposite the blank space where the name of the candidate for circuit judge would have appeared had the Republicans nominated a candidate, is not a vote for the whole Republican ticket nor for any one.

6. Elections—Determination of Tie—Power of County Board.— The county board of election commissioners has no right in case of a tie between candidates for the city council to determine by lot which of them is to receive the certificate of election, nor to issue a certificate of election; but the result of the vote should be certified to the city council.

7. Elections—Pleading—Authority of County Board.—Where the county board of election commissioners has no right to determine a tie between candidates for a city council and issue a certificate of election, that in an election contest it is only alleged that the certificate given by the board was erroneous because the candidate was not elected will not prevent a finding of absence of authority to make such a determination, since the certificate given was void.

S. M. WALLACE for appellant.

BURNAM & SON for appellee.

Baker v. Dinsmore.

OPINION OF THE COURT BY JUDGE NUNN—Reversing.

Appellant and appellee were two of eight candidates at the last November election for the six offices of councilmen in the city of Berea, a city of the fifth class with only one voting precinct., There were four emblems upon the official ballot, viz., the Democratic, the Republican, the Lincoln Republican, and the Citizens' ticket. Under the Democratic emblem, there was a candidate for circuit judge and for each of the county offices, but none for any of the city offices of Berea. Under the Republican emblem there was no candidate for circuit judge, and only a partial list of candidates for the county offices, but there was a full list of candidates for the offices of the city of Berea, including six candidates for councilmen. There were no candidates under the Citizens' ticket for the district or any of the county offices, but there were three for city offices, to wit, one for police judge. and appellant and one other for councilman. All the emblems appeared in a row at the top of the ballot, and were printed as though there was a full ticket under each emblem; a blank space being left in each ticket where no candidate had been nominated. There were only six councilmen to be elected, and there were eight candidates, six of whose names appeared under the Republican device, appellee's being one of them, and two of whose names appeared under the device of the Citizens' ticket, appellant's being one of them.

At the close of the polls, the election officers counted the votes, and certified the result to be that appellant had received 123 votes and appellee 122. They, however, placed in the doubtful envelope four ballots, after having numbered them so as they might

be identified, sealed the envelope, and indorsed there-
on, as required by law, the manner in which they had
counted them.  Two of these ballots were stamped
under both the Republican and Citizens' devices, and
were counted for appellant.  Another was stamped
under both the Citizens' and Democratic devices, and
was counted for appellant.  The other was stamped
in the small square under the Republican device, at
the top of the ticket, opposite the blank space where
the name of the candidate for circuit judge would
have appeared had the Republicans nominated one.
This ballot was counted for Dinsmore.  The county
board of election commissioners in canvassing these
four ballots deducted from appellant's votes the two
which had been counted for him which were stamped
under the Republican device and also under the Citi-
zens' device, and deducted from Dinsmore's votes
the one which had been stamped in the small square
opposite the blank line at the top of the ballot where
the candidate's name for circuit judge would have
been printed if there had been one,  accepting  the
count of the election officers as to the other ballot
and as to the ballots in the box, which were properly
not examined.  This left appellee and appellant each
with 121 votes.  The county board then proceeded to
determine by lot which was entitled to the certificate,
as provided in subsection 11 of section 1596a of the
Statutes, and the lot fell to Dinsmore to whom they
issued the certificate of election.

Appellant, Baker, filed a petition of contest, setting
up two grounds:  First, that the county board had
improperly deducted the two votes in the doubtful
envelope from his votes; second, that nine voters,
naming them, who were not legally entitled to vote,
had voted for Dinsmore, and prayed that their votes

be deducted from the total number of votes received by Dinsmore. Dinsmore answered, denying all the material allegations of the petition, and alleged that one Alfred Titus had voted in the election against him and for Baker; that Titus was not a legal resident of Berea; and that this vote should be deducted from the total votes of Baker. A number of depositions were taken by each party, and the case was submitted for trial. Appellee asked that. the ballot box be opened and the ballots recounted, to which appellant objected. The court overruled his objections, however, and ordered the ballot box brought into court, unlocked the box, took out the ballots, and counted them. The result of the court's count, as we understand it, was that appellee had received 122 votes and appellant 119 votes of the votes in the ballot box, and then gave to appellee one and to appellant three of the contested ballots.

There are three questions to be considered in determining this case: First, whether the court erred in refusing to throw out any or all of the ten alleged illegal votes; second, whether the court erred in opening the ballot box and recounting the ballots therein over the objections of appellant; third, the question of the four. contested ballots, and for whom they should have been counted, if counted at all.

In regard to the first proposition, the testimony tends strongly to create a suspicion that at least some of the 10 alleged illegal voters were not residents and entitled to vote at the election, and that they voted for appellee, but the most that can be said of the testimony is that it creates a suspicion in these respects. There is nothing in it to justify a court to adjudge that they were illegal voters or that they voted for appellee. Therefore the lower court

did not err in refusing to reduce the total of appellee's votes on this ground.

. With reference to the second contention: that is, that the lower court had no legal right to open the ballot box and recount the ballots over the objections of appellant until it was satisfactorily proved that the ballot box had been kept as required by the statutes, that the ballots had not been tampered with since the election, and that the ballots offered in evidence were the identical ones cast. Under the authority of Edwards v. Logan, 114 Ky. 312, 70 S. W. 852, 75 S. W. 257, 24 Ky. Law Rep. 1099, 25 Ky. Law Rep. 435, this is indispensable. The record is silent upon this question. In other words, the record does not show that these requirements were observed before the delivery of the box containing the ballots counted to the court; nor does it show anything with reference to the condition of the box or the preservation of the ballots, or whether the ballots were found in the box in the condition which the law requires the election officers to put them in. In the case of Edwards v. Logan, supra, the court said: "But, before a recount of the ballots should be allowed to rebut the presumption of the correctness of the official returns, it should be proved satisfactorily that the ballots had not been tampered with since the election, and that those offered in evidence are the identical ones cast. * * * That presumption of the integrity of the ballots cannot attach, however, until it is first shown that they came from the officer whose duty it is by law to have and preserve them, and that they are apparently in the condition of preservation prescribed by the statute." We understand from this opinion that these facts must be shown by the party seeking to have the court open the box and recount

the ballots, and that it cannot be done until this much is shown. When this is done in order to prevent the ballots from being recounted, the other party must show that the ballots have been tampered with, or that access has been had to them by persons authorized by law. As there is no proof in the record that the ballots came from the officer whose duty it was under the law to have and preserve them, that they had been so kept since the election, and that they were apparently in the condition of preservation prescribed by statute, without this showing of the integrity of the ballots, they were not of equal dignity as evidence of the result of the election as the certificate of the election officers. See the case of Edwards v. Logan, supra. Therefore we are of the opinion that the court erred in counting the ballots in the box over the objections of appellant's counsel, and the certificate of the election officers as to the ballots which were uncontested must prevail, and it gave appellant 120 and appellee 121 votes.

We will now consider the four contested ballots. The lower court was correct in allowing appellant the vote which was cast by placing the stencil in the circle under the Democratic device and in the circle under the Citizens' ticket device. There were no opposing candidates under these two devices, and it was evidently the intention of the voter to vote for all of the candidates under the two devices. We are also of the opinion that the court did not err in deducting from appellant's votes the votes of the two electors who placed the stencil in the circle under the Republican device and also in the circle under the Citizens' ticket device. It is impossible to ascertain for whom these two voters intended to cast their votes, as there were candidates under the Republi-

can device for the same offices as for which the three persons under the Citizens' ticket were aspiring. These voters by placing the stencil under the Republican device apparently intended to vote for every person whose name appeared in the Republican column, and, likewise, by placing the stencil in the circle under the Citizens' ticket device. In other words, the placing of the stencil within the circle over both tickets indicated an intention to vote both tickets. In the Republican ticket there were six candidates for councilmen, the full quota, and there were two candidates for this office under the Citizens' ticket device. If these votes were counted in favor of the candidates under the Citizens' device, how is it possible to tell which two of the candidates on the Republican ticket should lose their votes? There is no possible way to ascertain this. We have been referred to the case of Herndon v. Farmer, 114 Ky. 200, 70 S. W. 632, 24 Ky. Law Rep. 1045, as sustaining the action of the lower court in counting these two ballots for appellant. The case is not like this one. In that case there were two opposing candidates for magistrate, one under the Democratic and the other under the Republican emblem, and there was an independent candidate for county court clerk under a separate device, but no candidate for county court clerk on the Republican ticket. There were 70 ballots cast by placing the stencil under the Republican device and also under the device of the independent candidate for county court clerk. The county election board refused to count these ballots because the stencil was placed under the two devices. This court decided that this was error, because it was easy to determine the intention of the voters; that is, that they intended to vote the Republican

ticket and also for the independent candidate for county court clerk, there being only one candidate in that column. The third contested ballot, the one counted for appellee, was marked with the stencil in the small square to the right of the blank at the head of the Republican ticket, where the name of the candidate for circuit judge would have been placed if there had been one, but was not marked elsewhere. In our opinion this evidenced the fact that the voter did not desire to vote the whole of the Republican ticket. He in fact did not vote for any one, and it is doubtful if he even intended to, and the lower court erred in counting this vote for appellee. Therefore the result is that each of the parties received 121 votes, and were tied as was found by the board of county commissioners. That board, however, had no right to determine by lot which of them was to receive the certificate of election, nor did they have a right to issue a certificate of election, as was determined by this court in the case of Stack v. Commonwealth, 118 Ky. 481, 81 S. W. 917, 26 Ky. Law Rep. 343. In that case in discussing the question under consideration the court said: ''The only duty imposed by this section upon the county board of election commissioners in cases of municipal offices is to count the ballots and certify the return to the common council of such municipality. They are not authorized in such cases to issue the certificate of election. Subsection 11 of the same section provides that, 'where the canvassing board of two or more counties on comparison of returns, or the board of canvassers for a county, find that two or more have received the highest and equal number of votes for the same office, they shall, by lot, determine which of the candidates is elected.' But no power or authority

is given to the canvassing board to determine which of the candidates is elected in the case of municipal officers. In such case their duty is fully discharged by certifying the vote to the common council of such municipality.'' It results, therefore, that the acts of the board of election commissioners in casting lots and determining that appellee was elected and giving him the certificate of election was without authority of law and void. Their duty in the matter was to certify the result of the count to the common council of the town of Berea. Appellee's counsel contends that appellant cannot reap the benefit of this error because he did not plead it. He did allege, in substance, that appellee was not elected and was not entitled to the certificate, but did not allege that the board was without authority to issue the certificate. The certificate was in effect void, and appellant should not be made to suffer because he gave erroneous reasons as to why the certificate was ineffective.

For these reasons, the judgment of the lower court is reversed and remanded, with directions to have the board of election commissioners for the county certify the result of the vote between these parties, as herein adjudged, to the common council of the town of Berea with direction for it to determine by lot, which is entitled to the office, as required by law.