JOSEPH E. BELL, Appellee, *vs.* DANIEL A. CLAWSON, Appellant.

*Opinion filed December 17, 1913.*

1. ELECTIONS—*the ballots will prevail over returns if they have been properly preserved.* In an election contest the ballots will prevail over the returns where it is shown that they have been preserved according to law and have not been exposed in such a way as to afford a reasonable probability that they have been changed or tampered with.

2. SAME—*when force of ballots as best evidence cannot be said to be overcome.* The fact that the evidence of the village clerk as to the manner in which he kept the ballots between the time of the election and the re-count does not show the highest degree of care and does not exclude the possibility that they could have been tampered with does not overcome the force of the ballots as the best evidence. (*Roland* v. *Walker,* 244 Ill. 129, distinguished.)

3. SAME—*when irregularity of cross in circle does not authorize rejecting ballot.* If there is a distinct cross in the circle, indicating an honest attempt of the voter to make a cross, the ballot should not be rejected because the cross is made irregularly and with more than two lines.

4. SAME—*mark which can be accounted for consistently with an honest purpose of voter does not necessarily invalidate ballot.* A mark upon a ballot which, though unnecessary, can be accounted for consistently with an honest purpose of the voter to indicate his choice does not necessarily render the ballot invalid.

5. SAME—*when crosses in two circles do not invalidate ballot.* A ballot having a cross in the circle of the People's ticket, on which the defendant in the election contest was a candidate, should be counted for him though there is also a cross in the circle of the Republican ticket, where the latter ticket is blank and it is proven that the defendant was a member of the republican party, thus indicating that the voter intended to vote for the defendant by marking the circle of the Republican ticket before he discovered there were no names on the ticket.

6. SAME—*lines in the square or circle must cross at some point.* To entitle a ballot to be counted there must be some point inside the square or circle where there is an intersection of lines which may be properly called a cross.

APPEAL from the Circuit Court of DeWitt county; the Hon. W. G. COCHRAN, Judge, presiding.

HERRICK & HERRICK, for appellant.

INGHAM & INGHAM, for appellee.

Mr. JUSTICE VICKERS delivered the opinion of the court:

At the village election held on April 15, 1913, Joseph E. Bell was a candidate on the Anti-License ticket and Daniel A. Clawson on the People's ticket for president of the village board of the village of Waynesville. They were the only candidates for that office at that election. There were 157 ballots cast, one of which was not cast for any-one for president of the village board. The judges of the election canvassed the returns and found that each of the candidates had received 78 votes and that there was a tie as to the office of president of the village board. The returns were certified to the village board, and the parties were notified to appear at a fixed time and place when and where the tie would be decided by lot, in accordance with section 58 of the Cities and Villages act. The village board caused lots to be cast and Clawson was successful, and thereupon he was declared to be the duly elected president of the village board and qualified as such. Subsequently Bell filed a petition to contest the election. The petition, after reciting the foregoing facts, alleged that the petitioner in fact received a majority of the legal votes cast at said election and was legally elected to said office, and that the returns made by the judges and clerks of the election were erroneous in that more votes were counted for Clawson than he was legally entitled to. The contestant claimed that the 78 votes counted for him were all legal ballots, and that he was entitled to that number of votes and that Clawson was entitled to only 77 votes. The answer denies that the contestant received 78 legal votes but claims that the defendant received 78. Both the petition and the answer admit that no ballots were cast for any other person than the two candidates named. The issue

made by the pleading required a re-count of the ballots. Upon a hearing the court appointed three persons to assist in the re-count. Upon a re-count of the ballots it was found the contestant had 74 votes and the defendant 77 which were not objected to, and that there was one blank ballot counted for no one. There were two ballots, designated ballots A and B, which the defendant claims should be counted for him and to which the contestant made objections. There were four ballots claimed by the contestant, designated ballots 1, 2, 3 and 4, which were objected to by the defendant. The poll-books were offered in evidence, which showed that each of the parties had received 78 votes, and the records of the village showed the canvass of the votes by the village board, and its determination, by lot, that the defendant was elected. The court overruled the objections to ballots 1, 2, 3 and 4 and found that the contestant had received 78 votes and that the defendant had received 77, and rendered judgment finding that the contestant was duly elected president of the board of trustees. Clawson has prosecuted an appeal to this court and asks a reversal of the judgment.

Appellant first contends that the ballots were not preserved by the city clerk in such a way as to entitle them to more weight than the returns of the election officers. The law is, that in a proceeding to contest an election the ballots will prevail over the returns where it is shown that such ballots have been preserved according to law and have not been exposed in such way as to afford a reasonable probability that they have been changed or tampered with. *Murphy* v. *Battle,* 155 Ill. 182; *Beall* v. *Albert,* 159 id. 127; *Roland* v. *Walker,* 244 id. 129.

J. E. Buck, village clerk, testified that the ballots were cared for by him in the following manner: They were placed in a roll-top desk in the village council room and the desk was locked; that he had the only key to the desk, so far as his knowledge extended; that the ballots were

kept in this desk in a sack, which was fastened and locked; that the council room in which the desk was located was accessible to the men employed at the water-works, but that no one except himself had a key to the desk, so far as he knew; that the ballots remained in the desk about two weeks; that he then took them to his residence in an ordinary suit-case, which was locked; that the suit-case containing the ballots was kept under a bed in his residence; that the key to the suit-case was left at the house; that the ballots remained in the suit-case until the day before the re-counting; that they were then taken back to the council room and put in the same roll-top desk as before and the desk locked; that the ballots remained in the roll-top desk until they were required by the court for the purpose of the contest. The clerk testified that the bag containing the ballots appeared to be in the same condition when it was presented in court as when he first received it; that it had not been opened or tampered with, so far as he knew.

Upon this evidence and from an inspection of the bag containing the ballots the court held that the ballots had been properly preserved and were admissible in evidence. The evidence does not show the highest possible degree of care on the part of the clerk in preserving these ballots. His evidence does not exclude the possibility that some unauthorized person might have tampered with these ballots. In *Roland* v. *Walker, supra,* this court held that ballots locked in a trunk by one of the judges of the election over night and then delivered to the clerk of the city, who put them in a large roll-top desk in his office and kept them there for some time and afterwards removed them to a bank, where they were thrown on the floor of a fire-proof vault, which was open and accessible to the employees of the bank and other persons who had safety deposit boxes there, were not properly preserved. But in that case the city clerk was himself one of the candidates for mayor,

which office was the subject of the contest, and in addition to the manner in which the ballots were kept it was found, upon an examination of the ballots themselves, that there was convincing evidence that they had, in fact, been tampered with, and that thirteen of the ballots had been marked by someone so as to favor the interest of the city clerk in the contest for mayor. The statute does not prescribe any particular method of preserving the ballots during the six months that they are required to be kept after an election is held. The requirement is that they shall be carefully preserved. While we would not be willing to say that the degree of care exercised in the case at bar by the village clerk was of the highest character, still we do not think the court erred in holding that their integrity had been properly preserved.

The six original ballots that are in controversy have been certified up to this court for our examination.

The ballots used in this election had four party appellations, which, reading from left to right, were Anti-License, People's, Republican and Prohibition. To the left of these several party headings were party circles. Appellee, Bell, was a candidate for village president on the Anti-License ticket. Following his name were the names of three persons who were candidates for village trustees, preceded by instructions to "vote for three." Appellant was a candidate for village president on the People's ticket, which occupied the second column. There were below his name the names of three persons as candidates for village trustees, with the same instructions as upon the other ticket. Opposite each of the names of appellant and appellee on the left was a square, and similar squares were opposite the names of the several candidates for village trustee. The third ticket from left to right, being headed "Republican," was a blank ticket. There were the party circle and squares as on the other tickets, with blank dotted lines opposite the squares, but no names of any candidate appeared on the ticket. The fourth

and last ticket, being the Prohibition ticket, was in the same condition as the Republican ticket. The only tickets that had the names of any candidates for any office were the first and second,—Anti-License and People's.

Ballot A, which was objected to presumably because it contained a distinguishing mark, is marked with a cross in the circle of the People's ticket. There is a straight line running diagonally through the cross almost in the center, which is crossed by two lines running at right angles with the first. They appear to have been made by a downward stroke of the pencil and then an upward stroke almost parallel with the down-stroke, making a figure somewhat similar to a long, narrow letter "V." The two lines join together at the bottom and are also connected above the point where they cross the other line. This ballot has a distinct cross in the party circle of the People's ticket and shows an honest attempt on the part of the voter to make a cross. This ballot was properly counted for appellant. *Parker* v. *Orr,* 158 Ill. 609; *Winn* v. *Blackman,* 229 id. 198.

Ballot B was objected to and the objection sustained. The objection to this ballot is, that it is supposed to have a distinguishing mark upon it. The ballot is marked with a cross in the circle of the People's ticket and there is also a cross in the circle on the Republican ticket, which, it will be remembered, as already stated, has no names upon it. On the hearing it was proven that appellant is a republican. If the cross in the republican circle can be accounted for consistently with an honest purpose on the part of the voter, it should not be rejected because there appears upon it some mark placed there through mistake, inadvertence or because the voter changed his mind as to the method he intended to follow in marking his ballot. In *Winn* v. *Blackman, supra,* the question of distinguishing marks is discussed at length and the authorities in this and other jurisdictions are to some extent examined. In the case of *Rexroth* v. *Schein,* 206 Ill. 80, the rule was laid down that

it was not every mark that might appear upon a ballot which would distinguish it from other ballots when compared one with another, that would render it invalid. If it appears from the face of the ballot that the marks or writings were placed thereon as the result of an honest effort on the part of the voter to indicate his choice of candidates and the voter did not thereby intend to indicate who voted the ballot, it should not be rejected as to candidates for whom there is a choice expressed in compliance with the requirements of the statute, and this rule was approved in *Winn* v. *Blackman, supra.* In the case last above cited one ballot contained a cross in one party circle and a single line in another party circle, and this was held not to be a distinguishing mark. The cross in the republican circle in ballot B was very probably placed there by the voter. Knowing that appellant was a republican and desiring to vote for him, the voter probably put the cross in the republican circle before he discovered that there were no names upon that ballot, and then, observing that the persons for whom he desired to vote were on the People's ticket, he marked a cross in the circle upon that ticket. The cross in the circle of the Republican ticket has no effect. It would, of course, be different if there had been names of candidates upon that ticket, but being a mere blank, a mark in the circle could not neutralize the mark in the circle of the People's ticket. We are of the opinion, under the authorities in this State, that this cross can be accounted for consistently with an honest purpose on the part of the voter to comply with the law and that the ballot should not have been rejected.

The judges of the election counted both ballots A and B for the appellant, which gave him 78 votes. The court counted A for him but refused to count B, which reduced his vote to 77.

There were four ballots objected to that were counted for appellee. They are ballots 1, 2, 3 and 4. Ballot No. 1

is marked in the Anti-License circle very much in the same manner that ballot A is marked. That ballot was properly counted for appellee. Ballot No. 3 is in the same condition, and for the reasons already given it was properly counted for appellee. Ballot No. 4 has a cross in the circle of the Anti-License ticket and also a cross in the square opposite appellee's name. This ballot was properly counted for appellee. Ballot No. 2 was counted for appellee, and in this we think the court erred. The marking upon this ballot is as follows: Opposite the name of appellee, in the square, is a figure as follows: ☑ There is no point within the square where the lines cross. The figure does not resemble a cross nor does it indicate that the voter attempted to make a cross. The character inside the square on this ballot does not comply with the law. To entitle a ballot to be counted there must be a point inside the square or circle where there is an intersection of the lines which may properly be called a cross. We cannot find, upon the closest inspection, any place within the square where the lines intersect. This ballot was improperly counted for appellee. (*Parker* v. *Orr, supra; Winn* v. *Blackman, supra.*) If this ballot be not counted for appellee the result is that appellant had 78 votes and appellee 77. If it be counted for appellee, as was done by the election judges, then the result would be a tie, which has already been decided in favor of appellant.

For the reasons given above, the judgment of the circuit court of DeWitt county is reversed and the cause remanded, with directions to enter a judgment in favor of appellant and against appellee.

*Reversed and remanded, with directions.*