STATE, *ex rel.* J. E. PEACOCK, v. E. A. LATHAM, Chairman of Board of County Commissioners, and O. G. SAGE, Supervisor of Registration of Volusia County, Florida, as and constituting a majority of the County Canvassing Board of Volusia County, Florida, *et al.*

170 So. 475.
En Banc.
Opinion Filed October 14, 1936.

*Scarlett & Futch* and *Stewart & Stewart,* for Relator;

*Francis P. Whitehair, Hull, Landis & Whitehair, Walter A. Shelley, Horton W. Mabry, S. R. Dighton, J. U. Gillespie, Smith & Fuller, H. E. Couchman, H. B. Hodgden* and *John S. Byington,* for Respondents;

*Frank D. Upchurch* and *Fred R. Wilson,* for Thomas N. Tappy.

BUFORD, J.—This matter is before us on consideration of testimony taken before two Justices of this Court at the Court House in DeLand, Volusia County, Florida, pursuant to an order entered herein on the 3rd day of October, 1936, touching the issue presented by the pleadings as to whether or not the integrity of certain ballot boxes used for the reception of official ballots in certain precincts respectively in Volusia County at the Primary Election held June 2nd, 1936, has been preserved, and also on Motion for Peremptory Writ of Mandamus.

When each of the ballot boxes involved was offered in evidence the reception thereof was objected to on the ground that the inegrity of such ballot box had been violated since it came into the hands of the Supervisor of Registration of Volusia County, Florida, on delivery to him by one or more of the respective precinct election officials officiating as such in such precinct in such primary election.

Testimony was offered purporting to prove the integrity of each and every of the ballot boxes referred to. This evidence was to the effect that each box had been received by the Supervisor of Registration from the custody of an official who was either the Clerk or an Inspector of the election in the precinct wherein the box so delivered had been so used in such primary election. That when so received each box was securely locked and sealed with gummed paper furnished for that purpose. That none of said boxes had been opened, the seals broken or otherwise violated since the reception thereof. That each of said ballot boxes was so received by the Supervisor of Registration in a vault in the basement of the Court House, which vault was provided with only one way of ingress or egress, which was a doorway fitted with a wooden door opening on the inside of the vault, and having a lock and a steel vault door (provided with a secure combination lock) opening into the hall side of the door. That immediately after the primary of June 2, 1936, the Supervisor of Registration had changed the combination on the steel door, that he might be certain that no one except himself would have access to the vault. That no one except the Supervisor of Registration knew the combination of the lock on that door. That both doors had at all times since the date of said primary election been kept securely locked except when the Supervisor was personally present in said vault and that no one had been al-

lowed to enter or to remain in the vault except in the presence of the Supervisor of Registration and that no one had been allowed to touch or handle any of such ballot boxes.

It was shown, however, that when the ballot box used in Precinct No. 11 was presented by the Clerk of the election to the Supervisor of Registration it developed that the registration book was in the ballot box. The Supervisor of Registration declined to receive the box with the registration book in it and, after some parley, the box was opened in the presence of, and probably with the help of, the Supervisor of Registration and a deputy sheriff. The registration book was taken out of the box. The box was then resealed and delivered by the Clerk of the precinct election board to the Supervisor of Registration. The record shows that the seals last placed on the box now appear to be loose and insecure. While we find no evidence of any corruption in connection with the opening and resealing of this ballot box, yet it appears that it was unlawfully opened after having been sealed by the precinct election officers and, therefore, we hold that the ballot box used in Precinct No. 11 had not been preserved in the condition in which it left the board of election inspectors and its integrity has not been so preserved as to make the ballots therein now entitled to precedence as evidence of the result of the election in that precinct over the returns made by the precinct election officials.

The respondents offered testimony to show that the election officials in some of the involved precincts had sealed the poll lists in this ballot box and that such lists are now out of the box in the hands and custody of the Supervisor of Registration. The relator produced witnesses contradicting this as to some of the boxes.

Testimony was also offered to show that the seals on

some of the boxes were not as placed there by the election officials. Testimony was also offered tending to show that the relator had been in the vault where the boxes were kept after the boxes were placed there.

The record shows that the Supervisor is a partisan of Peacock, the relator.

The physical condition of the seals on at least four of the ballot boxes from which there was evidence tending to prove the poll lists had been removed from the boxes after delivery was such as to show that it was practically impossible for that circumstance to have occurred and that, therefore, such poll lists in fact had not been removed from such boxes after delivery to the Supervisor of Registration, though the witnesses who so testified necessarily testified from memory and may have been honestly mistaken.

The testimony that the seals on the respective boxes were not as they were when each of the boxes respectively was delivered is far from satisfactory or convincing. The weight of the evidence supports the integrity of the seals.

The evidence that the relator was at any time after June 2, 1936, in the vault without the Supervisor of Registration being present is conflicting and there is no evidence tending to show that he was so present in the vault after two o'clock P. M. June 3rd, 1936. There is no evidence that he has touched one of such boxes since they were returned to the custody of the Supervisor of Registration following the June 2nd primary election.

An examination of a great number of cases from other jurisdictions discloses that there has not been any unanimity in the views of the various courts as to what proof will be required before ballot boxes may be opened for the purpose of recount of ballots upon the allegation that they have not been properly counted, canvassed and returned. Probably

the most strict rule has been adopted by the Supreme Court of Kentucky. The decisions in that State appear to be based on the leading case of Edwards v. Logan, 114 Ky. 312, 70 S. W. 852, and 75 S. W. 254. In that case the Court said:

"From these authorities this Court holds: That the ballots cast in an election are the primary and best evidence of the voters' will as expressed therein, and that in case of a contest, as between the certificates of the officers of election and the ballots, the ballots are the best evidence, but that this is conditioned strictly upon the fact that the integrity of the ballots is clearly established; otherwise, the certificate of the officers of election should prevail. Bailey v. Hurst, 68 S. W. 867. That when the ballots are produced from the custody of the officer, whose duty it is to preserve them, are shown to have been preserved from intermeddling from unauthorized persons, and are apparently unchanged, they will be received as evidence of what they may show upon their face; but where they may have apparently been tampered with or where opportunities have been afforded to unauthorized persons, or to persons interested to tamper with them, then the burden is upon the party producing and relying upon such ballots to establish their integrity clearly and satisfactorily by the evidence."

The Supreme Court of Indiana in the case of State, *ex rel.*, v. Thornberg, 177 Ind. 178, 97 N. E. 534, expressed a much more liberal view. In that case the Court said:

"By reason of the claim that there was no statute in force authorizing a recount, and that the handling and use of the ballots and papers since the election, their being carried from Dunkirk to Portland on the occasion of the recount, and the packages had been opened by unauthorized persons, and the possibility that the ballots might have

been handled or tampered with, appellant contends that the papers and ballots have not been preserved with such care that the ballots could have any force as evidence, and that their value as evidence is thereby destroyed, and objection to their introduction is made on this ground, as to most of them, which will be hereafter designated as the general objection to avoid repetition. The objections seem to us to go rather to their weight than to their admissibility. What are claimed to be the original ballots are before us. In the absence of any specific evidence as to their having been tampered with, we are bound to presume that they have been honestly preserved, as they came from the hands of the inspectors. The undisputed ballots show 378 ballots for appellant and 379 ballots for appellee, and all the ballots are given or offered in evidence by the appellee."

In Avery v. Williams, 8 Ariz. 355, 76 Pac. 463, the Supreme Court of Arizona held:

"Though the ballots are not strung or placed in a sealed envelope, and at once delivered to the county treasurer, as provided by statute, they are admissible, on a contest to overcome the return of the election officers, contestant, however, having the burden of showing that they are the identical ballots cast, and that there is no reasonable probability that they have been disturbed or tampered with. The fact that they might possibly have been tampered with does not warrant their rejection."

In Mallett v. Plumb, 60 Conn. 352, 22 Atl. 772, a rule as liberal as the one above stated was followed, as was also in Murphy v. Lentz, 131 Iowa 328, 108 N. W. 530, where the Court said:

"The evidence as a whole is insufficient to sustain a reasonable suspicion that the ballots may have been tampered with. Everything is said to be possible. No lock has been

invented which is entirely secure against the ingenuity of burglars. It is all but impossible that anyone could have changed these ballots save the auditor or his deputy. There is nothing in the record to support a suspicion as to either of them, save that they had the opportunity. But someone must be entrusted with the care of ballots. The law has selected the auditor and those acting in his place and stead as deputies, and as against them in the performance of duties, necessarily affording opportunity, mere opportunity is insufficient to raise a suspicion."

Other cases bearing upon this subject are: "Hunt v. Campbell, 19 Ariz. 254, 169 Pac. 596; Dennison v. Astle, 281 Ill. 441, 117 N. E. 1004; Bell v. Clawson, 261 Ill. 145, 103 N. E. 591; Davenport v. Olerich, 104 Iowa 104, 194, 73 N. W. 603; Rich v. Young, 176 Ky. 813, 197 S. W. 442; Baker v. Dinsmore, 138 Ky. 277, 127 S. W. 997; Andrews v. Carney, Probate Judge, 74 Mich. 278, 41 N. W. 923; People v. McClellan, 191 N. Y. 341; 84 N. E. 68; People v. Livingston, 79 N. Y. 279; Gray v. State, *ex rel.*, 19 Tex. Civ. App. 521, 49 S. W. 699; Tebbe v. Smith, 108 Cal. 101, 41 Pac. 454, 29 L. R. A. 673; Ogg v. Glover, 72 Kan 247, 83 Pac. 1039.

We approve of the rule as stated in Tebbe v. Smith, 108 Cal. 101, 41 Pac. 454, 29 L. R. A. 673, wherein the Court said:

"Where a mode of preservation is enjoined by the statute, proof must be made of a substantial compliance with the requirements of that mode. But such requirements are construed as directory, merely, the object looked to being the preservation inviolate of the ballots. If this is established it would be manifestly unjust to reject them merely because the precise mode of reaching it had not been followed. So, too, when a substantial compliance with the pro-

visions of the statute has been shown, the burden of proof shifts to the contestee, of establishing that, notwithstanding this compliance, the ballots have in fact been tampered with, or that they have been exposed under such circumstances that a violation of them might have taken place. But this proof is not made by a naked showing that it was possible for one to have molested them. The law cannot guard against a mere possibility, and no judgment of any of its Courts is ever rendered upon one. When all this has been said, it remains to be added that the question is one of fact to be determined in the first instance by the jury or trial judge; and, while the ballots should be admitted only after clear and satisfactory evidence of their integrity, yet, when they have been admitted, this court will not disturb the ruling unless we, in turn, are as well satisfied that the evidence does not warrant it."

Applying the rule last above stated to the evidence in the case now before us, we find that all the ballot boxes involved in this proceeding, except the ballot box which was used in precinct No. 11, should be admitted in evidence and the ballots therein required to be recounted.

For the reasons stated, the relator may, if he sees fit, amend the alternative writ of mandamus so as to eliminate the Clerk and Inspectors of precinct No. 11 in Volusia County as parties to this suit and to eliminate reference to the ballot box used in precinct No. 11 at the primary election of June 2, 1936, and, after such amendment, peremptory writ will issue in accordance with the alternative writ as so amended.

Let it be understood, however, that we do not by this conclusion and order preclude the respondents after having complied with the peremptory writ of mandamus, from, by proper pleadings, showing to this Court any lawful reason

why the ballots as recounted in accordance with the command of such peremptory writ should not be canvassed and a nomination be declared thereon, should it be ascertained by evidence developed during such recount that any of the ballots found in any of such ballot boxes are not the identical ballots which were cast in the affected precinct at the primary election of June 2, 1936.

So ordered.

WHITFIELD, C. J., and ELLIS, TERRELL, BROWN and DAVIS, J. J., concur.